## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

ALIAH LARRY, DARBY JOHNSON, SHAHD MAJEED, SHIRLEY WEST and TAUHEEDAH ROBINSON, individually and on behalf of all others similarly situated,

Plaintiffs,

v.

KELLY SERVICES INC.,

Defendant.

Case No. 2:20-CV-11481-DPH-EAS

Judge Denise P. Hood

Magistrate Judge Elizabeth A. Stafford

## PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT AND FOR PRELIMINARY CERTIFICATION OF CLASS AND COLLECTIVE ACTION

Plaintiffs Aliah Larry, Darby Johnson, Shahd Majeed, Shirley West, and Tauheedah Robinson respectfully submit this Unopposed Motion and memorandum in support of their motion for (i) the Court to approve the settlement classes and preliminarily approve a proposed Settlement Agreement, Exhibit 1 to the memorandum submitted herewith, (ii) approve of the form and manner of notice to the class as described in that memorandum; and (iii) issue an order setting the date for a final settlement fairness hearing.

The grounds for this motion are set forth in the accompanying memorandum. A proposed order is attached.

Respectfully submitted,

_/s/ Michael A Josephson_
Michael A. Josephson
Andrew W. Dunlap
Alyssa White
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

Jennifer L. McManus
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067
248-542-6300 – Telephone

**ATTORNEYS FOR PLAINTIFFS**

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

|  |  |
|---|---|
| ALIAH LARRY, DARBY JOHNSON, SHAHD MAJEED, SHIRLEY WEST and TAUHEEDAH ROBINSON, individually and on behalf of all others similarly situated, | Case No. 2:20-CV-11481-DPH-EAS |
|  | Judge Denise P. Hood |
| Plaintiffs, | Magistrate Judge Elizabeth A. Stafford |
| v. |  |
| KELLY SERVICES INC., |  |
| Defendant. |  |

## MEMORANDUM IN SUPPORT
## OF UNOPPOSED MOTION FOR PRELIMINARY
## APPROVAL OF SETTLEMENT AND FOR PRELIMINARY
## CERTIFICATION OF CLASS AND COLLECTIVE ACTION

# TABLE OF CONTENTS

Table of Contents ............................................................................................ ii

Local Rule 7.1 Controlling and Most Appropriate Authority ......................... iv

Table of Exhibits ............................................................................................ vi

Local Rule 7.1 Statement of Issues Presented ............................................... vii

1.  Introduction ............................................................................................. 1

2.  Factual and Procedural Background ......................................................... 1

3.  Summary of the Settlement Terms ........................................................... 5

   a.  Settlement Amount and Payments to Named Plaintiffs, the Rule 23 Classes, and the FLSA Opt-Ins ............................................................... 6

     i.  Rule 23 Class Payments ..................................................................... 6

     ii.  FLSA Opt-In Payments. ..................................................................... 7

   b.  Release of Claims. ............................................................................... 7

   c.  Plaintiffs' Counsel's Negotiated Attorney Fees and Out-of-Pocket Costs and Expenses. ......................................................................................... 8

4.  Argument and Authorities ....................................................................... 8

   d.  The Court Should Certify the Rule 23 Classes for Settlement Purposes. ...... 8

     i.  The Court should grant class certification for settlement purposes .............. 9

       1.  The Classes are sufficiently numerous, and joinder is impracticable. ....... 10

       2.  The Class shares common issues of law and fact ......................... 12

       3.  The Named Plaintiffs' claims are typical of the Class. .............................. 13

       4.  The Named Plaintiffs are adequate representatives ..................................... 14

     ii.  The Rule 23(b)(3) Factors Are Met. ................................................. 15

       1.  Common questions predominate over the classes ...................................... 16

       2.  A class action settlement is a superior method of adjudicating this dispute. 17

     iii.  Named Plaintiffs' Counsel Should Be Appointed as Class Counsel. ........... 18

     iv.  The Court should approve the Notice forms for dissemination to the Rule 23 Class Members. ................................................................................. 19

   e.  The Court Should Preliminarily Approve the Settlement Agreement. .......... 20

     i.  The Settlement Agreement satisfies the Rule 23(e) factors. .......................... 22

1. The Named Plaintiffs and Class Counsel adequately represent the Rule 23 Classes...................................................................................... 23

2. The Settlement Agreement was negotiated at arm's length. ...................... 23

3. The relief provided for the class is adequate.................................................. 24

ii. The Settlement Agreement satisfies the UAW factors................................... 24

1. There is No Evidence of Fraud or Collusion. ............................................... 25

2. The Complexity, Expense and Likely Duration of the Litigation.............. 26

3. The Amount of Discovery Engaged in by the Parties. ............................... 27

4. The Likelihood of Success on the Merits. ...................................................... 29

5. The Opinions of Plaintiffs' Counsel and the Class Representatives. ........ 34

6. The Reaction of Absent Class Members. ....................................................... 35

7. Public Interest in the Settlement. .................................................................... 35

5. The Court should Approve the Parties FLSA Settlement. ................................... 35

6. Conclusion ...................................................................................................... 38

LOCAL RULE 7.1(A) CERTIFICATE OF CONFERENCE ..................................... 39

CERTIFICATE OF SERVICE .................................................................................... 39

## LOCAL RULE 7.1 CONTROLLING AND MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23(a): Requirements to certify a class action.

Fed. R. Civ. P. 23(e)(1)(A): "The court must approve any settlement ... or compromise of the claims ... of a certified class."

Fed. R. Civ. P. 23(e)(1)(C): "The court may approve a settlement ... or compromise that would bind class members only after a hearing and on finding that the settlement ... or compromise is fair, reasonable, and adequate."

The "law favors the voluntary settlement of class actions." *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd. sub nom. Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989).

Class action settlement approval involves a three-step process: preliminary approval, dissemination of notice to class members, and a fairness hearing or final approval hearing. *Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020).

Due process requires the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests. *Pelzer v. Vassalle*, 655 Fed. Appx. 352, 368 (6th Cir. 2016).

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981).

There are two steps for approving class settlements: "(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010).

Courts consider the following factors to determine whether a settlement is fair, reasonable, and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016).

"[D]istrict courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *2 (E.D. Mich. Oct. 28, 2021) (Hood, J.).

TABLE OF EXHIBITS

| Exhibit Number | Exhibit Name |
|:---:|:---:|
| 1 | Settlement Agreement |
| 1(a) | Position List of Class Members |
| 1(b) | FLSA Opt-In List |
| 1(c) | General Release |
| 1(d) | [Proposed] Notice of Settlement |
| 1(e) | [Proposed]Final Order and Judgment |
| 2 | Declaration of Michael Josephson |

## LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED

1. Whether the Court should preliminarily approve the proposed Settlement Agreement in this class action, where the agreement provides class members reasonable benefits given the litigation risks to which the class members' back wages are subject, and the settlement was negotiated at arm's length and does not involve any preferential treatment or other deficiencies.

ANSWER: Yes.

2. Whether Class Counsel should be appointed, where counsel has investigated and identified the claims levied, where Counsel has extensive experience in similar actions and substantial knowledge of the applicable law, and where Counsel has committed to representing the Class with sufficient resources to do so.

ANSWER: Yes.

3. Whether the Court should approve the Parties' Fair Labor Standards Act Settlement where the parties had a bona fide dispute, engaged in substantial discovery and briefing, negotiated an arm's' length resolution through an extensive mediation with a third-party mediator, have already gone through the notice period, and now request the Court to approve the settlement for the FLSA collective.

ANSWER: Yes.

4. Whether the proposed form and manner of notice to the class are appropriate and should be approved.

ANSWER: Yes.

1.     **Introduction.**

The purpose of preliminary approval is to "ascertain whether there is any reason to notify the class members of the proposed settlement" so that the class members may have the opportunity, upon receipt of such notice, to lodge any objections to the proposed settlement. After those steps, the Court may "proceed with a fairness hearing" to determine whether the proposed settlement is fair, reasonable, and adequate as required by Rule 23(e)(2), such that it should be given final approval. *In re Packaged Ice Antitrust Litig.*, No. 08-MO-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

Plaintiffs now seek the Court's approval of the proposed Settlement Agreement, Exhibit 1, and respectfully make four requests of the Court at this time: first, that the Court approve the settlement classes and preliminarily approve the proposed Settlement Agreement; second, that the Court approve the Parties' FLSA settlement, third, that the Court approve the proposed form and manner of notice to the class; and fourth, that the Court set a date for the fairness hearing. As the Parties will show, the proposed Settlement is well within the range of approval, there is no reason to doubt its fairness, and the Notice fully apprises class members of the proposed Settlement's 'terms and of the options open to them.

2.     **Factual and Procedural Background.**

On April 10, 2020, Plaintiff, Aliah Larry, filed a Complaint in the U.S. District Court for the Northern District of Georgia against Defendant asserting claims under the Fair Labor Standards Act, 29 U.S.C. § 201, et seq. ("FLSA") on behalf of a potential

collective action. ECF No. 1, at PageID 1. On June 4, 2020, the action was transferred to the Eastern District of Michigan.  ECF No. 2, at PageID 16. Plaintiffs moved for conditional certification and court-authorized notice on November 20, 2020. ECF No. 18, at PageID 99. On March 1, 2021, this Court issued an Order requiring the dissemination of Notice nationwide per 29 U.S.C. § 216(b) to "any person who was a salaried recruiter for KSI, who worked in excess of forty hours in one or more workweeks at any time from February 2018 to February 2021, and who was not compensated at one and one-half times his or her regular rate of pay for all overtime hours worked." ECF No. 37, at PageID 1089.  On April 1, 2021, Aliah Larry provided notice of this action to potential collective action members.  Following such notice, approximately 104 Opt-In Plaintiffs joined the Lawsuit. *See* Ex. 1(b), List of FLSA Opt-In Plaintiffs.

On June 28, 2021, Aliah Larry filed an Amended Complaint adding Darby Johnson, Shahd Majeed, and Shirley West as additional Named Plaintiffs and asserting, among other things, class claims under the state wage and hour laws of Kentucky, Pennsylvania, and California.  ECF No. 60, at PageID 1314. On July 12, 2021, Defendant filed a motion to dismiss the Amended Complaint.  ECF No. 61, at PageID 1334. The Court denied the motion on August 19, 2021. ECF No. 66, at PageID 1461. Between October 2021 and January 2023, the Parties engaged in extensive written and deposition discovery. The Parties also had multiple discovery disputes that were hotly contested and aggressively litigated throughout the pendency of this action, as reflected

2

in the Parties' extensive motion practice and briefing.[1] Counsel for the parties presented and deposed numerous witnesses at deposition, attended several in-person hearings, and engaged in oral argument on many of the foregoing motions.[2] Ex. 2, Declaration of Michael Josephson, at ¶¶ 14-17.

---

[1] Plaintiff's November 20, 2020, Motion for Conditional Certification and Court-Authorized Notice (ECF No. 18, PageID at 99); Defendant's December 11, 2020, Response to Certification (ECF No. 21, PageID at 410); Plaintiff's December 28, 2020, Reply in Support of Certification (ECF No. 23, PageID at 700); Defendant's January 19, 2021, Sur-Reply in Opposition to Certification (ECF No. 29, PageID at 857); Plaintiff's August 30, 2021, Motion for Protection (ECF No. 68, at PageID 1417); Plaintiff's March 18, 2022, Motion to Compel Discovery (ECF No. 80, at PageID 1654); Plaintiff's July 29, 2022, Motion to Compel Discovery (ECF No. 102, at PageID 1959); Defendant's August 4, 2022, Motion to Compel Discovery (ECF No. 106, at PageID 2153); Defendant's August 17, 2022, Motion for Protection (ECF No. 113, at PageID 2430); Plaintiff's September 7, 2022, Motion to Modify the Scheduling Order (ECF No. 123, at PageID 3375); Plaintiff's September 19, 2022, Motion to Compel KSI's Corporate Representative Deposition (ECF No. 131, at PageID 3707); Defendant's October 5, 2022, Motion to Strike Plaintiff's Motion to Compel KSI's Corporate Representative Deposition (ECF No. 153, at PageID 4103); Plaintiff's October 12, 2022, Motion to Dismiss Four Withdrawn Opt-In Plaintiffs (ECF No. 155, at PageID 4146); Plaintiff's October 26, 2022, Supplement (ECF No. 164, at PageID 4268); and Plaintiff's Motion to Modify the Scheduling Order (ECF No. 123, at PageID 3375).

[2] Court's February 9, 2021, Notice Setting Hearing on Motion to Certify Class (ECF No. 18), Motion for Protective Order (ECF No. 25), and Motion for Protective Order (ECF No. 31). ECF No. 35, at PageID 1037); Court's March 25, 2022, Notice of In Person Hearing On Motion to Compel (ECF No. 80). ECF No. 83, at PageID 1757; Court's September 12, 2022, Notice Of In Person Hearing on Motion to Modify Scheduling Order (ECF. No. 123). ECF No. 126, at PageID 3699; Court's September 14, 2022, Amended Notice of In Person Hearing on Motion to Compel (ECF No. 102), Motion to Compel (ECF No, 106), and Motion for Protective Order (ECF No. 113). ECF No. 127, at PageID 3700; Court's September 30, 2022, Notice of in person hearing on Motion to Compel (ECF No. 131). ECF No. 146, at PageID 3913; Court's November 8, 2022, Notice of In Person Hearing on Motion to Dismiss (ECF No. 155). ECF No. 168, at PageID 4436.

The Parties subsequently scheduled a mediation for February 9, 2023, consistent with the Court's ADR requirement. *See* ECF No. 14, at PageID 61. On January 23, 2023, the Court entered an Order staying the case pending the Parties' mediation. ECF No. 172, at PageID 4463. Following the mediation, the parties further negotiated for months concerning the terms and form of notice documents. On April 20, 2023, Plaintiffs filed an unopposed motion seeking leave of Court to file a Second Amended Complaint wherein, among other things, they added Tauheedah Robinson as a Named Plaintiff and asserted claims under the state wage and hour laws of Illinois. ECF No. 175, at PageID 4474. On May 2, 2023, the Court granted Plaintiffs' motion for leave to amend, and, on May 3, 2023, Plaintiffs filed their Second Amended Complaint. ECF No. 177, at PageID 4505 (Order Granting Leave to File Second Amended Complaint); ECF No. 178, at PageID 4507 (Plaintiff's Second Amended Class and Collective Action Complaint).

The Parties now desire to settle, fully and finally, all claims that Plaintiffs asserted in the Second Amended Complaint or could have asserted based on the facts alleged in the Second Amended Complaint on the terms set forth in the Settlement Agreement. The settlement resolves the claims of the remaining opt-ins in addition to the Rule 23 class members. Both Parties agree this is a fair outcome as without the settlement, the case would continue to be hotly contested. Furthermore, as with any litigation, there is no guarantee for either party as to the outcome. Thus, the Parties believe this settlement is fair and reasonable.

3.    **Summary of the Settlement Terms**[3]

The Settlement Agreement covers the Named Plaintiffs and the Opt-In Plaintiffs who previously filed a notice of consent to opt into the FLSA collective and participate in this action (the "FLSA Opt-Ins"), which constitutes approximately 104 individuals. The Settlement Agreement also covers the members of the "Alleged Misclassification Class" (all current and former Recruiting Position Workers who worked for Defendant within Kentucky, Pennsylvania, and Illinois), and the "California Class" (collectively, the "Rule 23 Classes").  The Rule 23 Classes cover approximately 143 additional individuals.

The Parties' Settlement proposes to resolve the claims asserted by the Named Plaintiffs, the FLSA Opt-Ins, and members of the Rule 23 Classes through Defendant's payment of a total gross amount of $3,150,000.00, which payment includes full compensation of alleged unpaid wages, liquidated damages, service awards, payments to members of the collective, administrative fees, employer-side payroll taxes, and attorneys' fees and costs. Ex. 1, at ¶ IV.7. The net amount for distribution among the Named Plaintiffs, Rule 23 Classes, and FLSA Opt-Ins is $1,937,500.00 (the "Net Settlement"), less settlement administration costs and employer-side payroll taxes. *Id.* at

---

[3] In accordance with Federal Rule of Civil Procedure 23(e)(3), the Parties state that no agreement has been made between them in connection with the proposed Settlement, other than the Settlement Agreement itself.

¶ IV.7(a). In addition, each Named Plaintiff (Larry, West, Majeed, Johnson, and Robinson) will receive a Service Award of $5,000.00. *Id.*

### a. Settlement Amount and Payments to Named Plaintiffs, the Rule 23 Classes, and the FLSA Opt-Ins.

The settlement shares of the Named Plaintiffs, Rule 23 Classes, and FLSA Opt-Ins shall be paid by checks issued according to each participant's allocation. Half (50%) of each settlement payment shall be treated as taxable wages and shall be subject to required withholdings and/or deductions and reported as wage income as required by law. Ex. 1, at ¶ IV.10(j). Defendant is responsible for payment of the employer's share of payroll taxes resulting from the W-2 portion of the settlement payments. *Id.* The remaining half (50%) of each settlement payment shall be considered and reported as non-wage penalties and liquidated damages. *Id.* Settlement payments shall be made in check form, and each check will be valid for 90 days from the date of issuance. *Id.* at ¶¶ IV.10, 18.

### i. Rule 23 Class Payments.

Rule 23 Class Members who do not submit a request for exclusion and who timely submit a valid claim form to the Settlement Administrator, and the Opt-In Plaintiffs who do not request to withdraw, will be provided with their allocated amount. *See* Ex. 1, at ¶ IV.10 (describing the agreed comprehensive "points formula" that describes the method for allocating points (and corresponding monetary allocations) to each Rule 23 Class Member and Opt-In Plaintiff). The Rule 23 Class Members who do

not submit a request for exclusion and who submit a timely, complete, and valid claim form received by the Settlement Administrator by return mail, email, or fax within 60 days of the sending of the notice and claim form, and those Opt-In Plaintiffs who have not requested to withdraw from the Lawsuit and who submit a timely, complete, and valid claim form received by the Settlement Administrator by return mail, email, or fax within 60 days of the sending of the notice and claim form shall be considered "Claimants." The amount of individual settlement payments to Claimants, as calculated pursuant to the points formula, shall be determined from the Net Settlement before issuance of the notice of settlement.

### ii. FLSA Opt-In Payments.

FLSA Opt-In Plaintiffs, Ex. 1(b) will also receive their allocations based on the agreed "points formula" that describes the method for allocating points (and corresponding monetary allocations) to each Rule 23 Class Member and Opt-In Plaintiff.  The amount of individual settlement payments to each FLSA Opt-In, as calculated pursuant to the points formula, shall be determined from the Net Settlement before issuance of the notice of settlement.

### b. Release of Claims.

Opt-In Plaintiffs and Claimants will release Kelly from all claims that were or could have been asserted in the Second Amended Complaint under the FLSA, any applicable state law, and any applicable local law. *See* Ex. 1, ¶ IV.5.

Additionally, each Named Plaintiff will sign a general release and waiver of claims, *see* Ex. 1(c). In return for their general release, the Named Plaintiffs will each receive a Service Award of $5,000.00.

### c. Plaintiffs' Counsel's Negotiated Attorneys' Fees and Out-of-Pocket Costs and Expenses.

Plaintiffs' Counsel's negotiated Attorneys' Fees account for up to 35% of the Gross Settlement Amount *See* Ex. 1, ¶ IV.8(d). Specifically, Plaintiffs' counsel seeks, and Defendant does not oppose to the extent consistent with applicable law and subject to Court approval, attorneys' fees in an amount not to exceed 35% of the Gross Settlement Fund ($1,102,500.00), as well as reimbursement of their out-of-pocket litigation costs in an amount up to $85,000.00. *Id.* Both amounts are fair and reasonable to compensate Plaintiffs' Counsel for their efforts in prosecuting this action.

## 4.   Argument and Authorities

### a. The Court Should Certify the Rule 23 Classes for Settlement Purposes.

"[F]ederal policy favor[s] settlement of class actions," *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6th Cir. 2007), and a court should evaluate a proposed class settlement in light of that policy, *see IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (Hood, J).

> [C]lass action settlement approval involves 'a three-step process: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a formal fairness hearing or final approval hearing, at which class members may be heard regarding the

settlement,' where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be offered.

*Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020). "At the preliminary approval stage, the Court does not finally decide whether the settlement is fair and reasonable." *Id.* at 626. The question before the Court "is simply whether the settlement is fair enough that it is worthwhile to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Id.*

For preliminary approval, Rule 23(e) requires the parties to "'provide the court with information sufficient to enable it to determine whether to give notice of the proposal to the class.'" FED. R. CIV. P. 23(e)(1)(A). The court must direct notice of a proposed settlement to all class members who would be bound by it if the court will likely be able to approve the proposal under Rule 23(e)(2)[ ] and certify the class for purposes of judgment on the proposal." *Strano v. Kiplinger Washington Eds., Inc.*, No. 1:21-CV-12987, 2023 WL 119647, at *2 (E.D. Mich. Jan. 6, 2023) (cleaned up) (citing FED. R. CIV. P. 23(e)(1)(B)).

### i. The Court should grant class certification for settlement purposes.

A class may be certified under Rule 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and

adequately protect the interests of the class." FED. R. CIV. P. 23(a); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079-1083 (6th Cir. 1996); *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565, 569 (6th Cir. 2004). Each of those prerequisites is satisfied here. "Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med.*, 75 F.3d at 1079.

In addition to the FLSA collective discussed below, the Parties have agreed that for settlement purposes only, four sub-classes (referred to collectively as the "Rule 23 Classes") should be certified, the Class Representatives and Class Counsel should be appointed to represent the Rule 23 Classes, the Settlement Administrator should be appointed, and Notice should issue. The Rule 23 Classes are defined as follows:

1) The "Alleged Misclassification Class" means all current and former Recruiting Position Workers who worked for Defendant within: (i) the Commonwealth of Kentucky at any time  between June 28, 2016, and the date of Preliminary Approval of the Settlement, or July 10, 2023, whichever is later; (ii) the Commonwealth of Pennsylvania at any time between June 28, 2018, and the date of Preliminary Approval of the Settlement, or July 10, 2023, whichever is later; and (iii) the State of Illinois at any time between December 19, 2019, and the date of Preliminary Approval of the Settlement, or July 10, 2023, whichever is later.

2) The "California Class" means all current and former Recruiting Position Workers who worked for Defendant in the State of California at any time between June 28, 2017, and the date of Preliminary Approval of the Settlement, or July 10, 2023, whichever is later.

These Classes meet all of the applicable certification requirements.

### 1. The Classes are sufficiently numerous, and joinder is impracticable.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). Although "there is no strict numerical test, 'substantial' numbers usually satisfy the numerosity requirement." *Daffin v. Ford Motor Co.*, 458 F.3d 549, 552 (6th Cir. 2006). "Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Auto. U.S. LLC*, No. 06-cv-14276, 2007 WL 851627, at *3 (E.D. Mich. Mar. 21, 2007); *see also Garner Prop.*, 333 F.R.D. at 622 ("[A] class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (numerosity is satisfied with a putative class of at least "between 21 and 40" members); *Afro American Patrolmen's League v. Duck*, 503 F.2d 294, 298 (6th Cir. 1974) (35 members); *Slanina v. William Penn Parking Corp.*, 106 FRD 419, 423 (W.D. Pa. 1984) (25 persons). Although other factors may be considered, the Sixth Circuit has "distinctly emphasized that '[w]hen class size reaches substantial proportions ... the impracticability requirement are usually satisfied by the numbers alone.'" *Davidson v. Henkel Corp.*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079)). That is plainly the case here.

Here, Defendant's records reflect there are 143 Rule 23 Class Members between the two classes.[4]  The classes are undoubtedly sufficiently numerous, rendering joinder impracticable.

---

[4] The Misclassification Class includes approximately 75 people and the California Class includes approximately 68 people.

## 2.  There are common issues of law and fact.

"Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2022 WL 16708240, at *2 (E.D. Mich. Nov. 4, 2022) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The standard is not a demanding one. *Friske v. Bonnier Corp.*, 16-12799, 2019 WL 2601349, at *3 (E.D. Mich. June 25, 2019). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* "Though the rule 'speaks of 'questions' in the plural, [the Sixth Circuit has] said that there need only be one question common to the class.' However, this one question must represent 'a common issue the resolution of which will advance the litigation.'" *In re Flint Water Cases*, 571 F.Supp.3d 746, 787 (E.D. Mich., 2021) (citing *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 397 (6th Cir. 1998)); *Fallick v. Nationwide Mut. Ins. Co.*, 162 F.3d 410, 424 (6th Cir. 1998); *In re American Med. Sys., Inc.*, 75 F.3d at 1080. The commonality element is satisfied in this case.

All the classes consist of current and former Recruiting Position Workers who worked for Defendant during a set period. The primary questions of law and fact central to the claims of the classes against Defendant include:

> a.  Whether Defendant improperly classified the Rule 23 Class Members as exempt employees;
>
> b.  Whether Defendant failed to pay the Rule 23 Class Members at a rate of one and one-half times their regular rate of pay when they worked more than 40 hours in a single workweek;

c. Whether Defendant's decision to pay the Rule 23 Class Members straight time for overtime was made in good faith;

d. Whether Defendant's non-payment of wages amount to a willful violation of the respective state wage and hour laws, allowing for liquidated damages and a longer statute of limitations; and

e. Whether the Class Members have sustained damages and, if so, the proper measure of damages.

These are questions common regarding the proposed classes. Thus, for settlement purposes, the proposed Class members share sufficient commonality to satisfy the requirements of Rule 23(a)(2). *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533–34 (E.D. Mich. 2015) (finding commonality is satisfied if "the litigation is driven by issues that are common to the entire putative class").

### 3.  The Named Plaintiffs' claims are typical of the Class.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). "This requirement ensures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852-53. "If there is a strong similarity of legal theories, the requirement is met, even if there are factual distinctions among named and absent class members." *Intl. Union v. Ford Motor Co.*, 05-74730, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006), *aff'd*,

13

497 F.3d 615 (6th Cir. 2007). "The test for typicality, like commonality, is not demanding." *Friske*, 2019 WL 2601349, at *4; *Davidson*, 302 F.R.D. at 438 ("Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical.").

Here, the Named Plaintiffs seek to be appointed as Class Representatives. Their claims arise from the same alleged factual and legal circumstances that form the bases of the Rule 23 claims asserted on behalf of the Rule 23 Class Members. Named Plaintiffs worked for Defendant in Illinois (Robinson), Kentucky (Johnson), Pennsylvania (Majeed), and California (West)[5] during the applicable period and were classified as exempt by Defendant and paid a salary with no overtime compensation. These allegations are sufficient to meet the typicality requirement.

### 4. The Named Plaintiffs are adequate representatives.

For Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: 1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013). "The Rule requires that the class members have interests that are not antagonistic to one another.

---

[5] Larry also seeks for the FLSA settlement to be approved. *See infra* at page 36.

14

Thus, the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Id.*

Each of the Named Plaintiffs allege they have suffered the same injury during the relevant period as the underlying sub-classes of individuals they seek to represent as a result of Defendant's misclassification. *See Amchem.*, 521 U.S. at 625-26. Further, there is no evidence Named Plaintiffs have interests that are antagonistic to or at odds with those of the Rule 23 Class Members. Thus, for purposes of preliminary approval, Named Plaintiffs should be deemed adequate representatives of the proposed Rule 23 Class Members.

Furthermore, these Named Plaintiffs have shown themselves to be adequate representatives of the Classes, as each has devoted time and effort in prosecuting the claims herein, including: (1) assisting counsel with investigating the case; (2) providing discovery responses; and (3) assisting with settlement negotiations. *See, e.g., Strano v. Kiplinger Washington Eds., Inc.*, No. 1:21-CV-12987, 2023 WL 119647, at *3 (E.D. Mich. Jan. 6, 2023). Moreover, all Named Plaintiffs who joined the case prior to the Parties' mediation in February of 2023 (West, Majeed, Johnson, and Larry) sat for depositions and provided sworn deposition testimony in furtherance of their claims against Kelly.

Additionally, Class Counsel also meets the adequacy requirement of Rule 23(a)(4) because they have years of experience prosecuting and settling class action claims under state and federal wage laws. Ex. 2, Declaration of Michael Josephson at ¶¶ 3-10.

### ii. Rule 23(b)(3) Factors Are Met.

Rule 23(b)(3) permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

### 1. Common questions predominate over questions affecting only certain individuals.

The Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry examines "whether the shared attributes will be the main focus of the litigation." *Id.* at 623-24. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011)

> There are no bright lines for determining whether common questions predominate. Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. Common questions need only predominate; they need not be dispositive of the litigation. The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (internal citations omitted). Here, Plaintiffs contend that the Rule 23 Class Members and the Opt-In Plaintiffs were all misclassified by Defendant as exempt employees. The Rule 23 Class

Members and the Opt-In Plaintiffs all were paid in the same or similar manner and had similar job titles. Defendant has the same or similar defenses regarding the claims asserted by all Rule 23 Class Members and Opt-In Plaintiffs. *See* ECF No. 8, at PageID 14; ECF No. 62, at PageID 1361; *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) ("plaintiffs must show a 'strong likelihood' that those employees are similarly situated to the plaintiffs themselves"). The Rule 23 Class Members and the Opt-In Plaintiffs all have the same common questions of law and fact.

### 2. A class action is a superior method of adjudicating this dispute.

Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. FED. R. CIV. P. 23(b)(3). "In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider the difficulties likely to be encountered in the management of a class action. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) (internal citations omitted). A class action is considered preferable where the class members are

unlikely to seek relief in individual suits. *Kotila v. Charter Fin. Publg. Network, Inc.*, 1:22-CV-704, 2023 WL 3408349, at *4 (W.D. Mich. May 12, 2023).

Finally, where "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems… for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. A class action is the superior method of resolving claims if it will "achieve economies of time, effort, and expense, and promote… uniformity of decision as to persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615. Here, the factors set forth in Rule 23(b)(3) weigh in favor of class certification for settlement purposes because: (i) there is no indication that individual class members would prefer to bring individual actions rather than obtaining relief through a class-wide settlement; (ii) it is desirable to litigate (and settle) the claims in this forum because it is the District in which Defendant is headquartered; and (iii) it would not be economically feasible for many of the Rule 23 Class Members to obtain relief by bringing small individual suits.

### iii. Named Plaintiffs' Counsel Should Be Appointed as Class Counsel.

Under Rule 23(c)(1)(B), when certifying a class action, the Court must appoint class counsel under Rule 23(g). Rule 23(g) requires the court to look at four factors in determining the sufficiency of class counsel: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class

actions, other complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the resources that counsel will commit to representing the class. FED. R. CIV. P. 23(g)(1)(A). Additionally, the Court "may consider any other matter pertinent to counsel's ability to fairly and adequately represent the interests of the class" and may also award attorneys' fees and costs. FED. R. CIV. P. 23(g)(1)(B), (D).

Class Counsel meets the required criteria. Class Counsel performed substantial work identifying, investigating, prosecuting, and settling this wage and hour case. *See* Ex. 2, at ¶¶ 11-19. Further, as discussed above, Class Counsel has extensive experience handling class and collective actions in wage and hour cases such as this one, and thus has the requisite knowledge of the applicable law.

### iv. The Court should approve the Notice forms for dissemination to the Rule 23 Class Members.

Under Rule 23(c), notice must be "the best notice that is practicable under the circumstances, including individual notice to all members who can be reasonably identified through reasonable effort." FED. R. CIV. P. 23(c)(2)(B). That is, the notice "should be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.' *Intl. Union, United Auto., Aerospace, and Agr. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 629 (6th Cir. 2007).

> Due process requires the class notice to be reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the

> action and afford them an opportunity to present their objections. This does not require notice to set forth every ground on which class members might object to the settlement. This just means that the notice must fairly apprise the prospective members of the class of the terms of the proposed settlement so that class members may come to their own conclusions about whether the settlement serves their interests.

*Pelzer v. Vassalle*, 655 Fed. Appx. 352, 368 (6th Cir. 2016) (cleaned up).

Here, the proposed Notice Forms, Ex. 1(d), will be mailed out by the settlement administrator to the Rule 23 Class Members. The Forms provide clear and accurate information as to the nature and principal terms of the Settlement Agreement, including the monetary and other relief the Settlement provides. The proposed Notice Forms explain also why the individual is receiving the notice and explain the lawsuit and the method of allocating and paying net settlement amounts to the Rule 23 Class Members who submit a valid and timely claim. The proposed Notice Form explains the procedures and deadlines for opting-in or opting-out (Ex. 1, at IV.9) and, for Rule 23 Class Members, submitting objections. The Forms outline the consequences of taking or foregoing the various options available to members of the classes, and states the date, time and place of the final settlement approval hearing. *See* Ex. 1(d); Ex. 1, at ¶ IV.13.

Further, pursuant to Rule 23(h), the proposed Notice Forms also set forth the maximum amount of attorneys' fees and costs that may be sought. *Id.* Accordingly, the Notice Forms comply with the standards of fairness, completeness, and neutrality required of a settlement class notice.

### b.  The Court Should Preliminarily Approve the Settlement.

The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *see Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits."). There are two steps for approving class settlements: "(1) preliminary approval of the settlement and the content and method of class notice; and (2) final approval after notice and a fairness hearing." *Sheick v. Auto. Component Carrier, LLC*, No. 09-14429, 2010 WL 3070130, at *11 (E.D. Mich. Aug. 2, 2010). At this stage, the issue before the Court is whether the Settlement Agreement "is fair enough ... to expend the effort and costs associated with sending potential class members notice and processing opt-outs and objections." *Garner Props.*, 333 F.R.D. at 626. Courts should grant preliminary approval where the settlement "(1) does not disclose grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment to class representatives or of segments of the class, or excessive compensation for attorneys, and (2) 'appears to fall within the range of possible approval.'" *Sheick*, 2010 WL 3070130, at *11 (citation omitted).

Preliminary approval thus is a "threshold inquiry [which] often involves no more than an informal presentation of the parties' proposals to the Court," because, if preliminary approval is granted, there remain "substantial judicial processes [with which to] test the assumptions and representations upon which the parties' motions are premised." *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 330, 338 (N.D. Ohio 2001)

(citing Manual for Complex Litigation, § 30.41, at 236 (3rd ed. 1995)). The Court's inquiry at the preliminary approval stage therefore does not take the form of a "full and complete fairness review." *Id.* at 350. Indeed, at this stage, "when a settlement is the result of extensive negotiations by experienced counsel, the Court should presume it is fair." *Id.* at 351 (citing *Williams v. Vukovich*, 720 F.2d 909, 923 (6th Cir. 1983)).

Here, the Parties negotiated in good faith at arm's length through experienced counsel who had ample opportunity to investigate the strengths and weaknesses of their clients' claims and defenses, and the proposed Settlement is well within the range of possible approval. Accordingly, preliminary approval of the proposed Settlement is appropriate.

### i. The Settlement satisfies the Rule 23(e) factors.

In determining whether the Settlement is "fair, reasonable, and adequate," courts consider the following four factors under Rule 23(e): (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other. FED R. CIV. P. 23(e).[6]   Each of these elements is satisfied here.

---

[6] Some courts continue to apply the seven factors set out by the Sixth Circuit in *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). *See McKnight v. Erico Intl. Corp.*, 1:21-CV-01826, 2023 WL 2003276, at *9 (N.D. Ohio Feb. 8, 2023) (collecting cases); *compare McKnight*, 2023 WL 2003276, at *9 (finding the use of *UAW* factors "overlooks the mandatory language of amended Rule 23(e)(2)") *with Moeller v. Week Publications, Inc.*, 1:22-CV-10666, 2023 WL 119648, at *5 n.1 (E.D.

### 1. The Named Plaintiffs and Class Counsel adequately represent the Rule 23 Classes.

As discussed above, the Named Plaintiffs and Class Counsel have vigorously represented the interests of the Rule 23 Class Members and will continue to do so. For example, the Parties engaged in extensive motion practice, far-reaching written discovery, including significant document productions and depositions, mediation sessions, and settlement negotiations. Ex. 2, at ¶¶ 11-19.

### 2. The Settlement was negotiated at arm's length.

The Parties engaged in multiple mediation sessions in person and over the phone with Dennis Clifford, a mediator known for mediating complex employment disputes.[7] While they did not initially settle, the Parties continued to negotiate in good faith and came to an understanding in principle. From that foundation, the Parties were able to continue negotiations to draft the Memorandum of Understanding, Settlement Agreement (Ex. 1), Motion For Preliminary Approval, Notice Documents (Ex. 1(d)), and Proposed Orders (Ex. 1(e)). These Settlement Documents were achieved only after arm's length and good-faith negotiations between the parties spanning over months of communications and edits. *See Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement was negotiated at arm's length because procedural history reflected non-collusive

---

Mich. Jan. 6, 2023) (citing the advisory committee's notes to find the 2018 amendment did not replace the *UAW* factors).

[7] *See* https://www.cliffordemploymentlaw.com/mediation/.

negotiations, informal and formal discovery, and multiple mediation sessions); *Scobey*, 2021 WL 5040312, at *3 (Hood, J.) ("The fact that Plaintiffs were represented by experienced counsel supports the conclusion that the settlement was a product of an arms' length transaction.").

### 3.  The relief provided for the class is adequate.

In assessing whether the relief is adequate, the Court must take into account: "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C).

### ii.  The Settlement Agreement satisfies the *UAW* factors.

In addition to the Rule 23 factors, some courts still consider the factors set forth in *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Courts use these factors to determine whether a settlement is fair, reasonable, and adequate by considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* "The Sixth Circuit has extended 'wide discretion' to district courts 'in assessing the weight and applicability of [these

factors]." *Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, CV 20-12698, 2022 WL 17582004, at *2 (E.D. Mich. Dec. 12, 2022) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

"These factors are also considered in determining whether the settlement of FLSA claims is 'fair and reasonable.'" *Combs v. TruGreen LP*, 1:08-CV-489, 2010 WL 11636094, at *5 (S.D. Ohio Sept. 2, 2010). The Court may choose to consider only certain factors that are relevant to the settlement at hand and may choose to weigh particular factors according to the demands of the case. *Id.* In certain cases, a court may consider each factor individually. *Id.* "More often, however, inquiry into one factor necessarily overlaps with inquiry into another." *Id.* (internal citations omitted); *see Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the seven factors when determining whether a proposed FLSA settlement is fair and reasonable.). In this case, application of the *UAW* factors favors approval of the proposed Settlement.

### 1. There is No Evidence of Fraud or Collusion.

Here, the Settlement was the product of arm's length negotiations between experienced counsel. Ex. 2, at ¶¶ 18-19. The Settlement was reached after the Parties engaged in discovery regarding the class members' payroll data and Defendants' policies, and after the Parties engaged in meditation with Dennis Clifford and extensive settlement discussions. In this District, "settlement negotiations that employ third-party mediators or a Special Master may be viewed as evidence of an 'arm's length'

negotiation." *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*, No. CV 20-12698, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022); *Thomsen*, 2022 WL 16708240, at *6 (settlement through a neutral mediator supported the absence of fraud or collusion). Thus, the settlement is free from any indicia of fraud or collusion. *See Ford v. Carnegie Mgmt. Servs., Inc.*, No. 2:16-CV-18, 2017 WL 4390294, *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion."); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary").

### 2.  The Complexity, Expense, and Likely Duration of the Litigation.

Courts acknowledge that "[e]mployment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust v. Maru Rest.*, LLC, 17-CV-13879, 2019 WL 2866490, at *2 (E.D. Mich. July 3, 2019); *Graybill v. Petta Enterprises, LLC*, 2:17-CV-418, 2018 WL 4573289, at *5 (S.D. Ohio Sept. 25, 2018) ("[m]ost class actions are inherently complex" and finding this factor supported approval where the parties had been litigating for over a year and the case would require more discovery and motions, as well as trial preparation); *Doe 1-2 v. Deja Vu Services, Inc.*, 2:16-CV-10877, 2017 WL 2629101, at *7 (E.D. Mich. June 19, 2017), *aff'd*, 925 F.3d 886 (6th Cir. 2019)

(case presented complex legal issues because it combined a Rule 23 class action with a FLSA collective action). As outlined above, the Parties disagree about the merits of the state and federal claims alleged and the viability of Defendant's defenses. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of complex discovery disputes, a motion for summary judgment, a motion for decertification, and potentially a trial on the merits of unknown size and scope. *Thomsen*, 2022 WL 16708240, at *6 (where parties acknowledge "continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief" this factor favored approval). The Settlement, however, provides prompt and substantial relief to the Named Plaintiffs and Rule 23 Class Members and amplifies the benefits of that relief through the economies of class resolution.

### 3. The Amount of Discovery Engaged in by the Parties.

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *New York State Teachers' Ret. Sys. V. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). Indeed, many courts recognize that formal discovery is not necessary. *See UAW v. Gen. Motors Corp.*, 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (collecting cases) ("the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties"). Here, the parties conducted

formal *and* informal discovery regarding the claims and defenses at issue, class certification, and damages. Ex. 2, at ¶¶ 13-17. For example, the Parties exchanged over 25,000 documents and conducted 25 depositions between them. There were substantial discovery disputes that the Parties worked through, such as motions to compel discovery and depositions. *See* ECF No. 80, at PageID 1654 (Plaintiff's Motion to Compel Discovery); ECF No. 106, at PageID 2153 (Defendant's Motion to Compel Discovery); ECF No. 131, at PageID 3707 (Plaintiffs' Motion to Compel Defendant's Corporate Representative Deposition and Overrule Defendant's Objections to Deposition Topics).

Further, Class Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Ex. 2, at ¶¶ 1-10; *see supra* n. 6; *see Kritzer*, 2012 WL 1945144 at *7 (court finding this factor favored settlement) ("To ensure that the class plaintiffs have had access to the information needed to adequately assess their case and the desirability of the proposed settlement, it is necessary to consider the stage of the proceedings and the amount of discovery taken to date. … In light of the discovery that took place prior to settlement taking place, the Court deems it appropriate to defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding.") (internal citations omitted). This factor favors preliminary approval.

28

### 4. The Likelihood of Success on the Merits.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Graybill*, 2018 WL 4573289 at *6 (internal citations omitted). "The determination of a reasonable settlement 'is not susceptible to a mathematical equation yielding a particularized sum,' but turns on whether the settlement falls within a range of reasonableness." *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 237 (citing *Chavarria v. N.Y. Airport Serv., LLC*, 875 F.Supp.2d 164, 174 (E.D. N.Y. 2012)). "Although this factor requires 'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *IUE-CWA*, 238 F.R.D. at 595. Courts recognize that good-faith arguments may be advanced in favor of each side. As such, resolution of these issues could go either way. "Settlements involve compromise, and [c]ourts routinely recognize that settlements never equal the full value of the loss claimed by the plaintiffs." *IUE-CWA*, 238 F.R.D. at 596.

Here, a trial on the merits would involve significant risks as to liability. The core of the Parties' dispute is whether Defendant was required to pay the Recruiting Position Workers for overtime. The Parties had numerous factual and legal disputes. *See supra.* Furthermore, misclassification cases can be hard to litigate successfully. For example, Plaintiffs' collective and class could have been decertified, or the Court could have

found Defendant properly classified the class and collective members.[8] Furthermore,

had the Parties not settled, the case likely would have spanned a significant amount of

time. *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *2 (E.D. Mich.

Oct. 28, 2021) (Hood, J.). Defendant likely would have moved for summary judgment

arguing that there is no genuine issue of material fact regarding the Recruiting Position

Workers' classification as exempt employees. Plaintiffs likely would have moved for

summary judgment on the same issue and Defendant's good faith defense. Additionally,

Defendant would have moved to de-certify the collective action. Furthermore, when

the Parties settled, there were multiple discovery motions pending that would have

required hearings with the Court. While both Parties believe they would have succeeded

on the merits, there is no guarantee that either Party would receive an outcome in their

favor. In addition, further litigation would have required significant additional

resources. Courts have consistently held that the expense and possible duration of

litigation are major factors to be considered in evaluating the reasonableness of a

---

[8] *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (affirming the district court decertifying the class stating "the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions'"); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1105 (D. Kan. 2012) (decertifying a FLSA collective given the fact intensive nature of the exemption analysis where the Court found the Plaintiffs had not sufficiently showed that they are similarly situated to the extent necessary to make collective treatment of their claims proper and efficient under § 216(b)); *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929 (E.D. Ark. 2012) (decertifying where the wage claims required highly individualized inquiries into each class member's circumstances, employer had individualized defenses to overtime claims, and procedural considerations warranted decertification of a conditionally certified class).

settlement. *See e.g.*, *In re Telectronics Pacing Sys., Inc.*, 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Kelly has denied all liability and asserted numerous defenses, which, if established, could result in no recovery for Plaintiffs.

The Parties' Settlement Agreement provides a substantial recovery for the Rule 23 Class Members and Opt-In Plaintiffs and is therefore more than fair and reasonable. Pursuant to the Parties' agreement, the Net Settlement Fund for distribution to settlement participants is $1,937,500.00, assuming approval of the requested Service Awards to the Named Plaintiffs and less settlement administration costs and employer-side payroll taxes. *Id.* at ¶ IV.7(a). Plaintiffs estimate that, under their calculations, this amount exceeds the back wages owed to the Opt-In Plaintiffs and Rule 23 Class Members for the relevant time period. Assuming an average of 50 hours worked per week, or 10 potential uncompensated overtime hours per week, Plaintiffs calculated the amount of total unpaid overtime owed to the Opt-In Plaintiffs and Rule 23 Class Members as approximately $1,700,164.43. Ex. 2 at ¶ 20. The anticipated value of the Net Settlement Fund significantly exceeds the $1,700,164.43 owed in unpaid overtime. As the Net Settlement Fund, before deducting settlement administration costs and employer-side payroll taxes, is equal to approximately 114% of the amount Plaintiffs estimate as their potential back wages owed, the Opt-In Plaintiffs and Rule 23 Class Members will be fairly compensated.

Further, the Parties mutually established a point system to ensure fair and equitable allocation of settlement awards to the Opt-In Plaintiffs and Rule 23 Class

Members. *Id.* at ¶ IV.10. FLSA Opt-Ins receive one point per workweek worked as a salaried employee in a Recruiting Position during the relevant time period. *Id.* Rule 23 Class Members' points are allocated per pay period worked as a salaried employee in a Recruiting Position during the relevant time period. *Id.* Taking into account the variance in state laws, Rule 23 class members who worked in Kentucky receive one point per pay period, Rule 23 Class Members who worked in Illinois and Pennsylvania receive two points per pay period, and Rule 23 Class Members who worked in California receive three points per pay period. *Id.* As an illustration, points for 100 workweeks would be awarded as follows:

| Exemplar Points for 100 Workweeks (50 Pay Periods) | |
|---|---|
| *Class* | *Points* |
| FLSA Opt-In | 100 |
| Rule 23 Class Member – California | 150 |
| Rule 23 Class Member – Kentucky | 50 |
| Rule 23 Class Member – Pennsylvania | 100 |
| Rule 23 Class Member – Illinois | 100 |

For those who are FLSA Opt-Ins as well as a member of a Rule 23 class, their points will be combined (e.g. a Rule 23 Class member who worked in California and is also an FLSA Opt-In who worked for 100 workweeks would be entitled to 250 points, the sum of 100 (FLSA) + 150 (California); a Rule 23 Class Member who worked in Kentucky and is also an FLSA Opt-In and worked for 100 workweeks during the relevant time period would receive 150 points).

When total awarded points for settlement participants are tallied, the Parties will proceed to divide the net settlement amount by the sum of all points, which will quantify the monetary value of each point. The points and corresponding dollar values will be used to allocate settlement awards for each FLSA Opt-In and Rule 23 Class Member.

For example, if the aggregate sum of all points equaled 19,375 total points, then the Net Settlement Fund (excluding taxes and administration costs) for distribution would be $1,937,500.00 divided by 19,375 = a dollar value of $100.00 per point. Using this exemplar $100.00 value per point, then points would be used to allocate settlement awards to the exemplar 100-workweek Opt-In Plaintiffs and Rule 23 Class Members as shown below:

| Exemplar Point Application for 100 Workweeks (50 Pay Periods) | | |
|---|---|---|
| *Class* | *Points* | *Multiplied by Exemplar Point Value of $100.00* |
| FLSA Opt In | 100 | $10,000.00 |
| Rule 23 Class – California (Non-FLSA) | 150 | $15,000.00 |
| Rule 23 Claimant – Kentucky (Non-FLSA) | 50 | $5,000.00 |
| Rule 23 Claimant – Pennsylvania (Non-FLSA) | 100 | $10,000.00 |
| Rule 23 Claimant – Illinois (Non-FLSA) | 100 | $10,000.00 |
| Rule 23 Class (California) / FLSA Opt-In | (100 + 150) = 250 | $25,000.00 |
| Rule 23 Class (Kentucky) / FLSA Opt-In | (100 + 50) = 150 | $15,000.00 |
| Rule 23 Class (Pennsylvania) / FLSA Opt-In | (100 + 100) = 200 | $20,000.00 |
| Rule 23 Class (Illinois) / FLSA Opt-In | (100 + 100) = 200 | $20,000.00 |

The Parties' Settlement Agreement achieves a Net Settlement Fund that exceeds Plaintiffs' estimation of the back wages owed without further protracted litigation, and provides certainty as to the outcome of the instant action while minimizing further

litigation expense.  Ex. 1 at ¶ IV.12. Moreover, the Parties have agreed on the foregoing points-assignment methodology to ensure fair, reasonable, and transparent allocation of settlement payments. *Id.* at IV.10.

### 5. The Opinions of Plaintiffs' Counsel and the Class Representatives.

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour collective actions, they believe the Settlement constitutes a fair and reasonable result for all Parties Ex. 2, ¶¶ 1-10, 18-19; *see supra* n. 6.  This factor supports approval of the Settlement. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered"); *see also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-CV-717, 2019 WL 696941, *5 (S.D. Ohio Feb. 20, 2019), *adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) ("The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference.") (internal citations omitted).

### 6. The Reaction of Absent Class Members.

At this time, "[t]his factor is neutral because the proposed settlement is in the prenotice stage." *Thomsen*, 2022 WL 16708240, at *7; *see Lott v. Louisville Metro Gov't*, No. 3:19-CV-271-RGJ, 2023 WL 2562407, at *5 (W.D. Ky. Mar. 17, 2023) ("At the pre-notice stage, the Court does not yet know how absent class members will respond").

### 7. Public Interest in the Settlement.

The fact that the Settlement (1) resolves what would be further protracted litigation and (2) provides relief for individuals who, financially or otherwise, would be unable to bring their claims individually, also supports a finding that the Parties' Settlement promotes the public interest. *See, e.g., Graybill*, 2018 WL 4573289 at *7 (finding this factor favored approval because it was a reasonable compromise and "provides relief for individuals who may not be able to bring these claims on their own"); *Gentrup v. Renovo Servs.*, LLC, No. 1:07CV430, 2011 WL 2532922, *3 (S.D. Ohio June 24, 2011) ("Given the uncertainties surrounding the possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation."); *Kritzer*, 2012 WL 1945144 at *8 ("Generally speaking, the public interest favors the settlement of class action litigation.").

### 5. The Court should Approve the Parties FLSA Settlement.

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Williams v. Glob. Appliances, LLC,*

No. 19-12114, 2020 WL 13815464, at *1 (E.D. Mich. Aug. 20, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "[D]istrict courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *2 (E.D. Mich. Oct. 28, 2021) (Hood, J.) (quoting *Athan v. United States Steel Corp*, 523 F.Supp.3d 960, 964-65 (E.D. Mich. 2021)). "Settlements may be permissible in the context of a suit brought by employees under the FLSA for back wages because initiation of the action by the employees provides some assurance of an adversarial context." *Lynn's Food*, 679 F. 2d at 1354.

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016). Before approving settlement of an FLSA claim, "'the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented.'" *Scobey*, 2021 WL 5040312 at *2 (quoting *Athan*, 523 F.Supp. 3d at 965)); *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015). "A bona fide dispute has to do with whether some issue of the employer's liability is 'actually and reasonably in dispute.'" *Id.* (quoting *Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015)).

"This Circuit has not directly stated the factors courts are to consider in deciding whether an FLSA collective action settlement is fair and reasonable." *Scobey*, 2021 WL 5040312 at *2 (quoting *O'Bryant v. ABC Phones of N Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *7 (W.D. Tenn. December 22, 2020)). As explained above, however, the "seven-factor test" applied to determine "whether or not a class action settlement is 'fair, reasonable, and adequate,'" *Does 1-2 v. Deja Vu Services, Inc.*, 925 F. 3d 886, 894–95 (6th Cir. 2019), also weighs in favor of approving the Parties' proposed FLSA settlement.

In this case, notice has already gone out to the FLSA collective. *See* ECF 37, at PageID 1084 ("IT IS FURTHER ORDERED that the dissemination to potential plaintiffs of a notice substantially in the form submitted by plaintiff is approved, but that form must be edited to include the specific deadlines set by this order."). Following the notice period, 106 people opted into the collective. *See* Ex. 1(b). There are no absent class members. *Scobey*, 2021 WL 5040312 at *2. The FLSA opt-in period has closed. *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1009 (6th Cir. 2023) ("Class actions are fundamentally different from collective actions under the FLSA, in that, unlike a class action, an FLSA collective action is not representative—meaning that all plaintiffs in an FLSA action must affirmatively choose to become parties by opting into the collective action.").[9]

---

[9] Significantly, *Clark* did not overrule the standard for approval of FLSA settlements.

The elements regarding the approval of an FLSA collective settlement mirror the elements regarding the approval of a class action settlement outlined above. As such, this Court should approve the FLSA settlement.

## 6.    Conclusion

For the above reasons, the Court should: (1) preliminarily approve the settlement pursuant to Rule 23(e); (2) conditionally certify the settlement classes pursuant to Rule 23(c) and (e); (3) conditionally certify the settlement collective pursuant to 29 U.S.C. § 216(b); (4) approve the proposed Settlement Notice and Claim Form to be disseminated to Class Members pursuant to the Settlement Agreement; (5) appoint Rust Consulting, Inc. as the Settlement Administrator; (6) appoint Named Plaintiffs' Counsel as Class Counsel; and (7) schedule a fairness hearing.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Alyssa White
Texas Bar No. 24073014
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Jennifer L. McManus (P65976)
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**ATTORNEYS FOR PLAINTIFFS**

## LOCAL RULE 7.1(A) CERTIFICATE OF CONFERENCE

Counsel for both Parties have conferred, and the instant motion is unopposed.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

## CERTIFICATE OF SERVICE

I hereby certify that on October 23, 2023, the foregoing document was served by ECF electronic filing on all known parties.

*/s/ Michael A. Josephson*
**Michael A. Josephson**