## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

| | |
|---|---|
| ALIAH LARRY, DARBY JOHNSON, SHAHD MAJEED, SHIRLEY WEST and TAUHEEDAH ROBINSON, individually and on behalf of all others similarly situated, | Case No. 2:20-CV-11481-DPH-EAS |
| | Judge Denise P. Hood |
| Plaintiffs, | Magistrate Judge Elizabeth A. Stafford |
| v. | |
| KELLY SERVICES INC., | |
| Defendant. | |

## PLAINTIFFS' UNOPPOSED MOTION FOR
## FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT

Plaintiffs Aliah Larry, Darby Johnson, Shahd Majeed, Shirley West, and Tauheedah Robinson respectfully submit this Unopposed Motion for Final Approval of Class and Collective Settlement and Memorandum in support of their request for an Order granting Final Approval.

The grounds for this motion are set forth in the accompanying memorandum. A proposed order is attached.

Respectfully submitted,

By: /s/ Michael A Josephson
Michael A. Josephson
Andrew W. Dunlap
Alyssa White
**JOSEPHSON DUNLAP, LLP**

11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile

Richard J. (Rex) Burch
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile

Jennifer L. McManus
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067
248-542-6300 – Telephone

**ATTORNEYS FOR PLAINTIFFS**

## LOCAL RULE 7.1(A) CERTIFICATE OF CONFERENCE

Counsel for both Parties have conferred, and the instant motion is unopposed.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, the foregoing document was served by ECF electronic filing on all known parties.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

| | |
|---|---|
| ALIAH LARRY, DARBY JOHNSON, SHAHD MAJEED, SHIRLEY WEST and TAUHEEDAH ROBINSON, individually and on behalf of all others similarly situated, Plaintiffs, <br><br> v. <br><br> KELLY SERVICES INC., Defendant. | Case No. 2:20-CV-11481-DPH-EAS <br><br> Judge Denise P. Hood <br><br> Magistrate Judge Elizabeth A. Stafford |

## <u>MEMORANDUM IN SUPPORT OF UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE SETTLEMENT</u>

TABLE OF CONTENTS

Table of Contents ..................................................................................................ii

Table of Authorities .............................................................................................iii

Local Rule 7.1 Controlling and Most Appropriate Authority ..........................vii

Local Rule 7.1 Statement of Issues Presented ................................................viii

1.   Introduction ...............................................................................................1

2.   Final Approval of the Settlement is Appropriate. ...................................2

3.   Standards for Final Settlement Approval Under Fed. R. Civ. P. 23. ....3

   a.   The Settlement satisfies the Rule 23(e) factors. ............................4

   b.   The Settlement Agreement satisfies the *UAW* factors for Approval. ...........7

4.   Standards for Final Settlement Approval Under the FLSA. ................17

5.   Final Certification of the State Law Rule 23 Classes is Appropriate. ...18

   a.   The Rule 23 Classes are sufficiently numerous. ..........................19

   b.   The Commonality Requirement Is Met. ........................................20

   c.   The Typicality Requirement Is Met. ..............................................21

   d.   The Named Plaintiffs are adequate representatives. ...................22

   e.   Rule 23(b)(3) Factors Are Met. .....................................................23

6.   Final Approval of the Service Awards is Warranted. ...........................26

7.   The Agreed Fees and Costs Should Be Approved. ..............................27

8.   Conclusion ...............................................................................................30

LOCAL RULE 7.1(A) CERTIFICATE OF CONFERENCE ..........................31

CERTIFICATE OF SERVICE ..........................................................................31

## TABLE OF AUTHORITIES

Page(s)

Cases

*1-2 v. Deja Vu Services, Inc.*, 2:16-CV-10877,
   2017 WL 2629101 (E.D. Mich. June 19, 2017) ..................................................9

*Afro American Patrolmen's League v. Duck*,
   503 F.2d 294 (6th Cir. 1974)........................................................................ 19

*Amchem Prod., Inc. v. Windsor*,
   521 U.S. 591 (1997)........................................................................................ 25

*Athan v. United States Steel Corp*,
   523 F.Supp.3d 960 (E.D. Mich. 2021) ........................................................ 17

*Bacon v. Honda of America Manufacturing, Inc.*,
   370 F.3d 565 (6th Cir. 2004)........................................................................ 18

*Berry v. Sch. Dist. of City of Benton Harbor*,
   184 F.R.D. 93 (W.D. Mich. 1998) ............................................................... 16

*Combs v. TruGreen LP*, 1:08-CV-489,
   2010 WL 11636094 (S.D. Ohio Sept. 2, 2010) ............................................7

*Chavarria v. N.Y. Airport Serv., LLC*,
   875 F.Supp.2d 164 (E.D. N.Y. 2012) .......................................................... 11

*Clark v. A&L Homecare & Training Ctr., LLC*,
   68 F.4th 1003 (6th Cir. 2023) ...................................................................... 24

*Coulter-Owens v. Time, Inc.*,
   308 F.R.D. 524 (E.D. Mich. 2015) .............................................................. 20

*Crawford v. TRW Auto. U.S. LLC*,
   2007 WL 851627 (E.D. Mich. Mar. 21, 2007) ........................................... 19

*Davidson v. Henkel*,
   302 F.R.D. 427 (E.D. Mich. 2014) ........................................................19, 21

*Dillworth v. Case Farms Processing, Inc.*,
   2010 WL 776933 (N.D. Ohio Mar. 8, 2010)..........................................26, 28

*Does 1-2 v. Deja Vu Services, Inc.*,
   925 F. 3d 886 (6th Cir. 2019) ...................................................................... 18

*Douglas v. First Student, Inc.*,
   888 F. Supp. 2d 929 (E.D. Ark. 2012) ........................................................ 12

*Erie County Retirees Assoc. v. County of Erie. Pa.*,
   192 F. Supp. 2d 369 (W.D. Pa. 2002) ......................................................... 29

*Ford v. Carnegie Mgmt. Servs., Inc.*,
   2017 WL 4390294 (S.D. Ohio Oct. 3, 2017) ................................................8

*Franks v. Kroger Co.*,
   649 F.2d 1216 (6th Cir. 1981) .......................................................................3

*Friske v. Bonnier Corp.*,
  2019 WL 2601349 (E.D. Mich. June 25, 2019) ....................................................... 20, 21

*Frye v. Baptist Mem'l Hosp., Inc.*,
  495 F. App'x 669 (6th Cir. 2012) .......................................................................... 12

*Garner Properties & Mgmt., LLC v. City of Inkster*,
  333 F.R.D. 614 (E.D. Mich. 2020) ............................................................... 3, 19, 23

*Gentrup v. Renovo Servs., LLC*,
  2011 WL 2532922 (S.D. Ohio June 24, 2011) ....................................................... 16

*Granada Investments, Inc. v. DWG Corp.*,
  962 F.2d 1203 (6th Cir. 1992) ............................................................................... 7

*Graybill v. Petta Enterprises, LLC*, 2:17-CV-418,
  2018 WL 4573289 (S.D. Ohio Sept. 25, 2018) ............................................. 9, 11, 16

*Green v. Harbor Freight Tools USA, Inc.*,
  888 F. Supp. 2d 1088 (D. Kan. 2012) ................................................................... 12

*Griffin v. Flagstar Bancorp, Inc.*,
  2013 WL 6511860 (E.D. Mich. Dec. 12, 2013) ....................................................... 3

*Hensley v. Eckerhart*,
  461 U.S. 424, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983) ............................................. 27

*Hillson v. Kelly Servs. Inc.*,
  2017 WL 279814 (E.D. Mich. Jan. 23, 2017) .......................................................... 5

*In re American Medical Systems, Inc.*,
  75 F.3d 1069 (6th Cir. 1996) ........................................................................... 18, 19

*In re Cardizem CD Antitrust Litig.*,
  200 F.R.D. 297 (E.D. Mich. 2001) ....................................................................... 24

*In re Cardizem CD Antitrust Litig.*,
  218 F.R.D. 508 (E.D. Mich. 2003) ....................................................................... 16

*In re CMS Energy ERISA Litig.*,
  2006 WL 2109499 (E.D. Mich. June 27, 2006) ................................................. 26, 27

*In re Dry Max Pampers Litig.*,
  724 F.3d 713 (6th Cir. 2013) .............................................................................. 22

*In re Flint Water Cases*,
  583 F. Supp. 3d 911 (E.D. Mich. 2022) ................................................................ 28

*In re Packaged Ice Antitrust Litig.*,
  2010 WL 3070161 (E.D. Mich. Aug. 2, 2010) ......................................................... 1

*In re Telectronics Pacing Sys., Inc.*,
  137 F. Supp. 2d 985 (S.D. Ohio 2001) ................................................................. 13

*In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*,
  722 F.3d 838 (6th Cir. 2013) .............................................................................. 21

*Intl. Union v. Ford Motor Co.*,
  2006 WL 1984363 (E.D. Mich. July 13, 2006) ....................................................... 21

*IUE-CWA v. General Motors Corp.*,
  238 F.R.D. 583 (E.D. Mich. 2006) .............................................................. Passim
*Kritzer v. Safelite Sols., LLC,* No. 2:10-CV-0729,
  2012 WL 1945144 (S.D. Ohio May 30, 2012) ...................................... 11, 17
*Kotila v. Charter Fin. Publg. Network, Inc.,*1:22-CV-704,
  2023 WL 3408349 (W.D. Mich. May 12, 2023)........................................ 25
*Kunkle v. Q-Mark, Inc.,*
  2013 WL 6913250 (S.D. Ohio Dec. 30, 2013)..............................................7
*Lakosky v. Discount Tire Co., Inc.,*
  2015 WL 4617186 (E.D. Mich. July 31, 2015)......................................... 17
*Lazy Oil Co. v. Wotco Corp.,*
  95 F. Supp. 2d 290 (W.D. Pa. 1997)........................................................ 16
*Lynn's Food Stores, Inc. v. United States,*
  679 F.2d 1350 (11th Cir. 1982) ................................................................ 17
*McKnight v. Erico Intl. Corp.*1:21-CV-01826,
  2023 WL 2003276 (N.D. Ohio Feb. 8, 2023) ..............................................4
*Mitchell v. Indep. Home Care, Inc.,*
  2019 WL 696941 (S.D. Ohio Feb. 20, 2019) ............................................ 14
*Moulton v. U.S. Steel Corp.,*
  581 F.3d 344 (6th Cir. 2009).................................................................... 26
*New York State Teachers' Ret. Sys. V. Gen. Motors Co.,*
  315 F.R.D. 226 (E.D. Mich. 2016) ..................................................... 10, 11
*Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance
  Corp.,*
  2022 WL 17582004 (E.D. Mich. Dec. 12, 2022)..................................... 7, 8
*Petrovic v. Amoco Oil Co.,*
  200 F.3d 1140 (8th Cir.1999).................................................................... 15
*Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson,*
  390 U.S. 414 (1968) ....................................................................................2
*Randleman v. Fidelity Nat'l Title Ins. Co.,*
  646 F.3d 347 (6th Cir. 2011) .................................................................... 23
*Rawlings v. Prudential-Bache Properties, Inc.,*
  9 F.3d 513 (6th Cir. 1993) ................................................................... 27, 28
*Reed v. Rhodes,*
  179 F.3d 453 (6th Cir. 2008)..................................................................... 27
*Scobey v. Gen. Motors, LLC,*
  2021 WL 5040312 (E.D. Mich. Oct. 28, 2021) ................................5, 12, 17
*Slanina v. William Penn Parking Corp.,*
  106 FRD 419 (W.D. Pa. 1984) .................................................................. 19
*Snook v. Valley Ob-Gyn Clinic, P.C.,*
  2015 WL 144400 (E.D. Mich. Jan. 12, 2015)............................................ 17

*Stoetzner v. U.S. Steel Corp.*,
   897 F.2d 115 (3d Cir.1990) ........................................................................ 15
*Strano v. Kiplinger Washington Eds., Inc.*,
   2023 WL 119647 (E.D. Mich. Jan. 6, 2023) .............................................. 23
*Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271,
   2022 WL 16708240, at *6 (E.D. Mich. Nov. 4, 2022) ........................ 8, 9, 20
*UAW v. Ford Motor Co.*,
   2008 WL 4104329 (E.D. Mich. Aug. 29, 2008) ........................................ 14
*UAW v. General Motors Corp.*,
   497 F.3d 615 (6th Cir. 2007) .......................................................... 3, 4, 7, 10
*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) .................................................................................. 20
*Williams v. First Nat'l Bank*,
   216 U.S. 582 (1910) .................................................................................... 2
*Williams v. Glob. Appliances, LLC*,
   2020 WL 13815464 (E.D. Mich. Aug. 20, 2020) ...................................... 17
*Williams v. Vukovich*,
   720 F.2d 909 (6th Cir. 1983) ..................................................................... 14
*Young v. Nationwide Mut. Ins. Co.*,
   693 F.3d 532 (6th Cir. 2012) ..................................................................... 25

## Statutes

29 U.S.C. § 216(b) .................................................................................. 2, 29

## Rules

Fed. R. Civ. P. 23 .............................................................................. Passim
Fed. R. Civ. P. 23(a) .......................................................................... Passim
Fed. R. Civ. P. 23(b) ......................................................... 19, 23, 24, 25
Fed. R. Civ. P. 23(e) ....................................................................... 2, 4

## LOCAL RULE 7.1 CONTROLLING AND MOST APPROPRIATE AUTHORITY

Fed. R. Civ. P. 23(a): Requirements to certify a class action.

Fed. R. Civ. P. 23(e)(1)(A): "The court must approve any settlement ... or compromise of the claims ... of a certified class."

Fed. R. Civ. P. 23(e)(1)(C): "The court may approve a settlement ... or compromise that would bind class members only after a hearing and on finding that the settlement ... or compromise is fair, reasonable, and adequate."

The "law favors the voluntary settlement of class actions." *Steiner v. Fruehauf Corp.*, 121 F.R.D. 304, 305 (E.D. Mich. 1988), *aff'd. sub nom. Priddy v. Edelman*, 883 F.2d 438 (6th Cir. 1989).

Courts consider the following factors to determine whether a settlement is fair, reasonable, and adequate: "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007).

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008).

"In reviewing a settlement of an FLSA private claim, a court must scrutinize the proposed settlement for fairness, and determine whether the settlement is a fair and reasonable resolution of a bona fide dispute over FLSA provisions." *Williams v. K&K Assisted Living LLC*, No. 15-cv-11565, 2016 WL 319596, at *1 (E.D. Mich. Jan. 27, 2016).

"[D]istrict courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *2 (E.D. Mich. Oct. 28, 2021) (Hood, J.).

**LOCAL RULE 7.1 STATEMENT OF ISSUES PRESENTED**

1. Whether the Court should find that the settlement is fair, reasonable, and comports with the terms of the Parties' settlement agreement and preliminary approval order?

ANSWER: Yes.

2. Whether the Court should enter an Order granting Final Approval of the class and collective settlement?

ANSWER: Yes.

3. Whether the Court should approve the proposed Service Awards to the Named Plaintiffs?

ANSWER: Yes.

4. Whether the Court should approve the unopposed fee and cost award sought by Class Counsel?

ANSWER: Yes.

5. Whether the Court should approve the unopposed payment to the Settlement Administrator?

ANSWER: Yes.

1.    **Introduction.**

Plaintiffs Aliah Larry, Darby Johnson, Shahd Majeed, Shirley West, and Tauheedah Robinson ("Named Plaintiffs") request an Order granting Final Approval of the class and collective settlement in this case.

The Court entered its preliminary certification and approval order on December 11, 2023 (the "Preliminary Approval Order"). *See* ECF No. 186 at PageID.4792.  The purpose of preliminary approval is to notify the class members of the proposed settlement" so that the class members may have the opportunity, upon receipt of such notice, to lodge any objections to the proposed settlement. Upon completion of the notice process,  the Court may "proceed with a fairness hearing" to determine whether the proposed settlement is fair, reasonable, and adequate as required by Rule 23(e)(2), such that it should be given final approval. *In re Packaged Ice Antitrust Litig.*, No. 08-MO-01952, 2010 WL 3070161, at *4 (E.D. Mich. Aug. 2, 2010).

The Notice and Claim Form process has been completed as required in the Preliminary Approval Order and the parties' Settlement Agreement. 125 individuals out of 225 (55%) submitted Claim Forms to participate in the Settlement (Class Members who returned Claim Forms to participate in the settlement are the "Claimants"[1]).  These

---

[1] Claimants who returned a timely and complete Claim Form on or before the deadline of March 26, 2024, as required under the Parties' Agreement, are eligible to receive their allocated distribution of the Net Settlement amount. Pursuant to the Parties' Agreement, settlement administrator RUST Consulting will circulate a final reconciliation report sometime in April 2024. ECF. No. 185-1 at ¶ IV.9(e). The Parties

individuals claimed 48.3% of the available settlement funds. *See generally* ECF. No. 185 at PageID.4653; *see also* Exhibit 1, Declaration of Jennifer Mills, Claims Manager at RUST Consulting at ¶¶ 19-20.   The average settlement payment if approved is $7,549.66. *Id.* The highest payment individual settlement payment will be $56,757.18 and the lowest will be $70.68. *Id.* No objections were received and no individuals elected to opt out of the settlement. *Id.* at ¶¶ 17-18.

All applicable standards for final approval under 29 U.S.C. § 216(b) and FED. R. CIV. P. 23(e) have been satisfied. Now, Plaintiffs request the Court enter an order granting Final Approval of the terms of this Class and Collective Settlement, including approval of Service Awards to the Named Plaintiffs and approval of the fee and cost award sought by Class Counsel.

## 2.     Final Approval of the Settlement is Appropriate.

Plaintiffs seek final approval of the Settlement Agreement under both FED. R. CIV. P. 23(e) and the FLSA. "Compromises of disputed claims are favored by the courts." *Williams v. First Nat'l Bank*, 216 U.S. 582, 595 (1910). Settlement spares the litigants the uncertainty, delay and expense of a trial, while simultaneously reducing the burden on judicial resources. The ultimate determination whether a proposed settlement warrants approval resides in the Court's discretion. *Protective Comm. for Indep. S'holders of TMT Trailer Ferry, Inc. v. Anderson*, 390 U.S. 414, 424-25 (1968).

_____

anticipate the final numbers and distribution may differ slightly from those referenced herein and in Exhibit 1, but do not anticipate that the differences will be material.

Both Plaintiffs and Defendants submit that the terms of the Settlement preliminarily approved by this Court are fair and reasonable and in the best interests of all parties. The results of the Claims Process underscore the same. *See generally* Ex. 1; *see also* Exhibit 2, Declaration of Michael Josephson, Class Counsel, at ¶ 22. All of the requirements and standards for final approval have been met or exceeded. The Class Members' response to the Settlement was positive. Indeed, roughly half of the Class Members opted in as Claimants and not a single Class Member returned a Request for Exclusion. Furthermore, not a single Class Member has objected to the settlement. Thus, Plaintiffs submit that final approval is warranted.

**3.      Standards for Final Settlement Approval Under Fed. R. Civ. P. 23.**

"[F]ederal policy favor[s] settlement of class actions," *UAW v. General Motors Corp.*, 497 F.3d 615, 632 (6ᵗʰ Cir. 2007), and a court should evaluate a proposed class settlement in light of that policy, *see IUE-CWA v. General Motors Corp.*, 238 F.R.D. 583, 593 (E.D. Mich. 2006) (Hood, J). The Sixth Circuit has recognized that "the law generally favors and encourages the settlement of class actions." *Franks v. Kroger Co.*, 649 F.2d 1216, 1224 (6th Cir. 1981); *see Griffin v. Flagstar Bancorp, Inc.*, 2013 WL 6511860, at *2 (E.D. Mich. Dec. 12, 2013) ("The Sixth Circuit and courts in this district have recognized that the law favors the settlement of class action lawsuits.").

> [C]lass action settlement approval involves 'a three-step process: (1) preliminary approval of the proposed settlement at an informal hearing; (2) dissemination of mailed and/or published notice of the settlement to all affected class members; and (3) a formal fairness hearing or final approval hearing, at which class members may be heard regarding the

settlement,' where evidence and argument concerning the fairness, adequacy, and reasonableness of the settlement may be offered.

*Garner Properties & Mgmt., LLC v. City of Inkster*, 333 F.R.D. 614, 620 (E.D. Mich. 2020).

Here, steps one and two have been successfully completed; all that remains is for this Court to conduct a Fairness Hearing. *Id.* The Parties negotiated in good faith at arm's length through experienced counsel who had ample opportunity to investigate the strengths and weaknesses of their clients' claims and defenses, and the proposed Settlement is well within the range of possible approval. Furthermore, as explained *infra*, the Settlement satisfies the Rule 23(e) factors as well as the *UAW* factors. Accordingly, final approval of the proposed Settlement is appropriate.

### a. The Settlement satisfies the Rule 23(e) factors.

In determining whether the Settlement is "fair, reasonable, and adequate," courts consider the following four factors under Rule 23(e): (1) whether the class representatives and class counsel have adequately represented the class, (2) whether the proposal was negotiated at arm's length, (3) whether the relief provided for the class is adequate, and (4) whether the proposal treats class members equitably relative to each other. FED R. CIV. P. 23(e).[2] Each of these elements is satisfied here.

---

[2] Some courts continue to apply the seven factors set out by the Sixth Circuit in *International Union, UAW, et al. v. General Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). *See McKnight v. Erico Intl. Corp.*, 1:21-CV-01826, 2023 WL 2003276, at *9 (N.D. Ohio Feb. 8, 2023) (collecting cases); *compare McKnight*, 2023 WL 2003276, at *9 (finding the use of *UAW* factors "overlooks the mandatory language of amended Rule 23(e)(2)") *with Moeller v. Week Publications, Inc.*, 1:22-CV-10666, 2023 WL 119648, at *5 n.1 (E.D.

### i. The Named Plaintiffs and Class Counsel adequately represent the Rule 23 Classes.

As discussed above, the Named Plaintiffs and Class Counsel have vigorously represented the interests of the Rule 23 Class Members and will continue to do so. For example, the Parties engaged in extensive motion practice, far-reaching written discovery, including significant document productions and depositions, mediation sessions, and settlement negotiations. Ex. 2, at ¶¶ 11-19.

### ii. The Settlement was negotiated at arm's length and treats class members equitably relevant to each other.

The Parties engaged in multiple mediation sessions in person and over the phone with Dennis Clifford, a mediator known for mediating complex employment disputes.[3] While they did not initially settle, the Parties continued to negotiate in good faith and came to an understanding in principle. From that foundation, the Parties were able to continue negotiations to draft the Memorandum of Understanding, Settlement Agreement (ECF No. 185-1), Motion For Preliminary Approval (EC No. 185), and Notice Documents (ECF No. 185-5). These Settlement Documents were achieved only after arm's length and good-faith negotiations between the parties spanning over months of communications and edits. *See Hillson v. Kelly Servs. Inc.*, No. 2:15-CV-10803, 2017 WL 279814, at *6 (E.D. Mich. Jan. 23, 2017) (finding that settlement agreement

---

Mich. Jan. 6, 2023) (citing the advisory committee's notes to find the 2018 amendment did not replace the *UAW* factors).

[3] *See* https://www.cliffordemploymentlaw.com/mediation/.

was negotiated at arm's length because procedural history reflected non-collusive negotiations, informal and formal discovery, and multiple mediation sessions); *Scobey v. Gen. Motors, LLC*, No. 20-12098, 2021 WL 5040312, at *3 (E.D. Mich. Oct. 28, 2021) (Hood, J.). ("The fact that Plaintiffs were represented by experienced counsel supports the conclusion that the settlement was a product of an arms' length transaction."). Moreover, as the Motion for Preliminary Approval and Settlement Agreement lay out in extensive detail, the Parties spent considerable time developing an agreed formula system for ensuring objective and equitable valuation of all damage awards to Claimants. ECF No. 185, PageID.4654-55, 4679-82.

### iii.  The relief provided for the class is adequate.

Here, the total Net Settlement negotiated exceeded the actual back wages owed to potential settlement participants. Ex. 2 at ¶ 20. Based on settlement participation and pursuant to the agreed formula system, the ultimate amount to be distributed under this settlement totals an estimated $936,453.87, among 125 participants. Ex. 1 at ¶¶ 13-20; Ex. 2 at ¶¶ 20-22. The average settlement payment to settlement participants is $7,549.66. Ex. 1 at ¶ 19. This constitutes relief that is more than adequate.

Of the amount for distribution, an estimated $627,788.10 is to be distributed pursuant to the Parties' agreed points formula among the 55 Rule 23 Class Members who returned Claim Forms, and an estimated $512,228.26 is to be distributed pursuant to the agreed points formula among the 79 FLSA Claimants who returned Claim Forms. Ex. 1 at ¶¶ 13-20; Ex. 2 at ¶¶ 20-22. The average settlement payment to Rule 23 Class

Members who elected to participate is $11,414.33. *Id.* The average settlement payment to the FLSA Claimants is $6,483.90. *Id.* These amounts also account for the eleven (11) settlement participants who are eligible to receive awards as both FLSA opt-ins and Rule 23 Class Members. *Id.* These 11 individuals are eligible to receive an estimated $203,633.17 for distribution. *Id.* This is more than sufficient to satisfy the requirements of Rule 23.

### b.  The Settlement Agreement satisfies the *UAW* factors for Approval.

In addition to the Rule 23 factors, courts still consider the factors set forth in *Int'l Union, United Auto., Aerospace, & Agric. Implement Workers of Am. v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007). Courts use these factors to determine whether a settlement is fair, reasonable, and adequate by considering "(1) the risk of fraud or collusion; (2) the complexity, expense and likely duration of the litigation; (3) the amount of discovery engaged in by the parties; (4) the likelihood of success on the merits; (5) the opinions of class counsel and class representatives; (6) the reaction of absent class members; and (7) the public interest." *Id.* "The Sixth Circuit has extended 'wide discretion' to district courts 'in assessing the weight and applicability of [these factors]." *Palm Tran, Inc. Amalgamated Transit Union Loc. 1577 Pension Plan v. Credit Acceptance Corp.*, CV 20-12698, 2022 WL 17582004, at *2 (E.D. Mich. Dec. 12, 2022) (citing *Granada Investments, Inc. v. DWG Corp.*, 962 F.2d 1203, 1205-06 (6th Cir. 1992)).

"These factors are also considered in determining whether the settlement of FLSA claims is 'fair and reasonable.'" *Combs v. TruGreen LP*, 1:08-CV-489, 2010 WL

11636094, at *5 (S.D. Ohio Sept. 2, 2010).  The Court may choose to consider only certain factors that are relevant to the settlement at hand and may choose to weigh particular factors according to the demands of the case. *Id.* In certain cases, a court may consider each factor individually. *Id.* "More often, however, inquiry into one factor necessarily overlaps with inquiry into another." *Id.* (internal citations omitted); *see Kunkle v. Q-Mark, Inc.*, No. 3:13-CV-82, 2013 WL 6913250, *1 (S.D. Ohio Dec. 30, 2013) (noting that courts apply the seven factors when determining whether a proposed FLSA settlement is fair and reasonable.). In this case, application of the *UAW* factors favors approval of the proposed Settlement.

### i.  There is No Evidence of Fraud or Collusion.

Here, the Settlement was the product of arm's length negotiations between experienced counsel. Ex. 2, at ¶¶ 18-19. The Settlement was reached after the Parties engaged in discovery regarding liability and damages, including an extensive review of the class members' payroll data and Defendants' policies.  Likeiwse the Parties participated in meditation with Dennis Clifford. In this District, "settlement negotiations that employ third-party mediators or a Special Master may be viewed as evidence of an 'arm's length' negotiation." *Palm Tran, Inc. Amalgamated Transit Union Local 1577 Pension Plan v. Credit Acceptance Corp.*, No. CV 20-12698, 2022 WL 17582004, at *4 (E.D. Mich. Dec. 12, 2022); *Thomsen*, 2022 WL 16708240, at *6 (settlement through a neutral mediator supported the absence of fraud or collusion). Thus, the settlement is free from any indicia of fraud or collusion. *See Ford v. Carnegie Mgmt. Servs.,*

*Inc.*, No. 2:16-CV-18, 2017 WL 4390294, *2 (S.D. Ohio Oct. 3, 2017) ("The parties' divergent positions would have required judicial resolution had a settlement not been reached through many months of arms-length negotiation between competent counsel. Thus, the settlement is free from indicia of fraud and collusion."); *see also IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 598 (E.D. Mich. 2006) ("Courts presume the absence of fraud or collusion unless there is evidence to the contrary").

### ii. The Complexity, Expense, and Likely Duration of the Litigation.

Courts acknowledge that "[e]mployment cases in general, and wage-and-hour cases in particular, are expensive and time-consuming." *Daoust v. Maru Rest.*, LLC, 17-CV-13879, 2019 WL 2866490, at *2 (E.D. Mich. July 3, 2019); *Graybill v. Petta Enterprises, LLC*, 2:17-CV-418, 2018 WL 4573289, at *5 (S.D. Ohio Sept. 25, 2018) ("[m]ost class actions are inherently complex" and finding this factor supported approval where the parties had been litigating for over a year and the case would require more discovery and motions, as well as trial preparation); *Doe 1-2 v. Deja Vu Services, Inc.*, 2:16-CV-10877, 2017 WL 2629101, at *7 (E.D. Mich. June 19, 2017), *aff'd*, 925 F.3d 886 (6th Cir. 2019) (case presented complex legal issues because it combined a Rule 23 class action with a FLSA collective action). As outlined *infra* and in their Motion for Preliminary Approval, the Parties disagree about the merits of the state and federal claims alleged and the viability of Defendant's defenses. If the litigation had continued, the Parties would have faced obstacles and uncertainties, including the outcome of complex discovery disputes,

a motion for summary judgment, a motion for decertification, and potentially a trial on the merits of unknown size and scope. *Thomsen*, 2022 WL 16708240, at *6 (where parties acknowledge "continued litigation would be complex, costly, and likely continue for several years with no guarantee of relief" this factor favored approval). The Settlement, however, provides prompt and substantial relief to the Named Plaintiffs and Claimants and amplifies the benefits of that relief through the economies of class resolution.

### iii.  The Amount of Discovery Engaged in by the Parties.

"The relevant inquiry with respect to this factor is whether the plaintiff has obtained a sufficient understanding of the case to gauge the strengths and weaknesses of the claims and the adequacy of the settlement." *New York State Teachers' Ret. Sys. V. Gen. Motors Co.*, 315 F.R.D. 226, 236 (E.D. Mich. 2016), *aff'd*, 2017 WL 6398014 (6th Cir. Nov. 27, 2017). Indeed, many courts recognize that formal discovery is not necessary. *See UAW v. Gen. Motors Corp.*, 05-CV-73991-DT, 2006 WL 891151, at *19 (E.D. Mich. Mar. 31, 2006) (collecting cases) ("the absence of formal discovery is not unusual or problematic, so long as the parties and the court have adequate information in order to evaluate the relative positions of the parties"). Here, the parties conducted formal *and* informal discovery regarding the claims and defenses at issue, class certification, and damages. Ex. 2, at ¶¶ 13-17. For example, the Parties exchanged over 25,000 documents and conducted 25 depositions between them. There were substantial discovery disputes that the Parties worked through, such as motions to compel discovery and depositions. *See* ECF No. 80, at PageID 1654 (Plaintiff's Motion to

10

Compel Discovery); ECF No. 106, at PageID 2153 (Defendant's Motion to Compel Discovery); ECF No. 131, at PageID 3707 (Plaintiffs' Motion to Compel Defendant's Corporate Representative Deposition and Overrule Defendant's Objections to Deposition Topics).

Further, Class Counsel has comprehensive knowledge of the facts and legal issues relating to the respective claims and defenses and has ample evidence on which to base an informed assessment of the proposed Settlement. Ex. 2, at ¶¶ 1-10; *see supra* n. 6; *see Kritzer*, 2012 WL 1945144 at *7 (court finding this factor favored settlement) ("To ensure that the class plaintiffs have had access to the information needed to adequately assess their case and the desirability of the proposed settlement, it is necessary to consider the stage of the proceedings and the amount of discovery taken to date. … In light of the discovery that took place prior to settlement taking place, the Court deems it appropriate to defer to the judgment of experienced trial counsel with regard to the evaluation of the strength of the case and the desirability of settlement at this stage of the proceeding.") (internal citations omitted). This factor favors approval.

### iv.  The Likelihood of Success on the Merits.

"The most important of the factors to be considered in reviewing a settlement is the probability of success on the merits. The likelihood of success, in turn, provides a gauge from which the benefits of the settlement must be measured." *Graybill*, 2018 WL 4573289 at *6 (internal citations omitted). "The determination of a reasonable settlement 'is not susceptible to a mathematical equation yielding a particularized sum,'

but turns on whether the settlement falls within a range of reasonableness." *N.Y. State Teachers' Ret. Sys.*, 315 F.R.D. at 237 (citing *Chavarria v. N.Y. Airport Serv., LLC*, 875 F.Supp.2d 164, 174 (E.D. N.Y. 2012)). "Although this factor requires 'some evaluation of the merits of the dispute, the district court must refrain from reaching conclusions upon issues which have not been fully litigated.'" *IUE-CWA*, 238 F.R.D. at 595. Courts recognize that good-faith arguments may be advanced in favor of each side. As such, resolution of these issues could go either way. "Settlements involve compromise, and [c]ourts routinely recognize that settlements never equal the full value of the loss claimed by the plaintiffs." *IUE-CWA*, 238 F.R.D. at 596.

Here, a trial on the merits would involve significant risks as to liability. The core of the Parties' dispute is whether Defendant was required to pay the Recruiting Position Workers for overtime. The Parties had numerous factual and legal disputes. *See supra.* Furthermore, misclassification cases can be hard to litigate successfully. For example, Plaintiffs' collective and class could have been decertified, or the Court could have found Defendant properly classified the class and collective members.[4] Furthermore,

---

[4] *See Frye v. Baptist Mem'l Hosp., Inc.*, 495 F. App'x 669, 671 (6th Cir. 2012) (affirming the district court decertifying the class stating "the similarities necessary to maintain a collective action under § 216(b) must extend 'beyond the mere facts of job duties and pay provisions'"); *Green v. Harbor Freight Tools USA, Inc.*, 888 F. Supp. 2d 1088, 1105 (D. Kan. 2012) (decertifying a FLSA collective given the fact intensive nature of the exemption analysis where the Court found the Plaintiffs had not sufficiently showed that they are similarly situated to the extent necessary to make collective treatment of their claims proper and efficient under § 216(b)); *Douglas v. First Student, Inc.*, 888 F. Supp. 2d 929 (E.D. Ark. 2012) (decertifying where the wage claims required highly individualized inquiries into each class member's circumstances, employer had

had the Parties not settled, the case likely would have spanned a significant amount of time. *Scobey,* 2021 WL 5040312, at *2 (Hood, J.). Defendant likely would have moved for summary judgment arguing that there is no genuine issue of material fact regarding the Recruiting Position Workers' classification as exempt employees. Plaintiffs likely would have moved for summary judgment on the same issue and Defendant's good faith defense. Additionally, Defendant would have moved to de-certify the collective action. Furthermore, when the Parties settled, there were multiple discovery motions pending that would have required hearings with the Court. While both Parties believe they would have succeeded on the merits, there is no guarantee that either Party would receive an outcome in their favor. In addition, further litigation would have required significant additional resources. Courts have consistently held that the expense and possible duration of litigation are major factors to be considered in evaluating the reasonableness of a settlement. *See e.g.,* *In re Telectronics Pacing Sys., Inc.,* 137 F. Supp. 2d 985, 1013 (S.D. Ohio 2001). Kelly has denied all liability and asserted numerous defenses, which, if established, could result in no recovery for Plaintiffs.

The Parties' Settlement Agreement provides a substantial recovery for the Rule 23 Class Members and Opt-In Plaintiffs and is therefore more than fair and reasonable. Pursuant to the Parties' agreement, the Net Settlement Fund for distribution to settlement participants is $1,937,500.00, assuming approval of the requested Service

---

individualized defenses to overtime claims, and procedural considerations warranted decertification of a conditionally certified class).

Awards to the Named Plaintiffs and less settlement administration costs and employer-side payroll taxes. ECF No. 185-1 at ¶ IV.7(a). The Net Settlement Fund, before deducting settlement administration costs and employer-side payroll taxes, was equal to approximately 114% of the amount Plaintiffs estimate as their total potential back wages owed. ECF No. 185-7, PageID.4786-87, ¶ 20. Ultimately, 55% of potentially eligible Claimants elected to participate in the settlement. Ex. 1 at ¶¶ 13-20; Ex. 2 at ¶¶ 20-22. In total, these participants are entitled to distribution of settlement payments totaling $936,453.87 (excluding Service Awards to the Named Plaintiffs). *Id.* This amount for distribution constitutes 48.3% of the total Net Settlement Fund and is consistent with the number of Claimants who returned Claim Forms to participate in this settlement. *Id.* Plaintiffs estimate the settlement participants are receiving amounts generally equivalent to back wages owed. Accordingly, this result – especially when compared to the risks of continued litigation – represents excellent recovery for the settlement participants.

### v. The Opinions of Plaintiffs' Counsel and the Class Representatives.

"The endorsement of the parties' counsel is entitled to significant weight, and supports the fairness of the class settlement." *UAW v. Ford Motor Co.*, No. 07-CV-14845, 2008 WL 4104329, at *26 (E.D. Mich. Aug. 29, 2008). Based on Class Counsel's knowledge of the case and applicable law, as well as their experience in numerous similar wage and hour collective actions, they believe the Settlement constitutes a fair and

reasonable result for all Parties. ECF No. 185-7, PageID.4788-90, ¶¶ 1-10, 18-19; *see supra* n. 6. This factor supports approval of the Settlement. *See Williams v. Vukovich*, 720 F.2d 909, 922–23 (6th Cir. 1983) ("The court should defer to the judgment of experienced counsel who has competently evaluated the strength of his proofs.... [T]he deference afforded counsel should correspond to the amount of discovery completed and the character of the evidence uncovered"); *see also Mitchell v. Indep. Home Care, Inc.*, No. 2:17-CV-717, 2019 WL 696941, *5 (S.D. Ohio Feb. 20, 2019), *adopted*, 2019 WL 1125760 (S.D. Ohio Mar. 12, 2019) ("The recommendation of Class Counsel, skilled in class actions and corporate matters, that the Court should approve the Settlement is entitled to deference.") (internal citations omitted).

Class Counsel's opinion is underscored by the participation in this settlement. Ultimately, 125 Claimants (55% of Class Notice recipients) returned Claim Forms to participate in the settlement. Seventy-eight (79) of the 104 potential FLSA settlement participants (76%) returned Claim Forms. Fifty-seven (55) of the 154 potential Rule 23 Claimants (36%) returned Claim Forms. Ex. 1 at ¶¶ 13-19; Ex. 2 at ¶ 22. These settlement participants are eligible for total net distribution of $936,453.87. *Id.*

### vi.  There are No Objections From Absent Class Members.

Throughout the entire notice process and continuing through the date of filing, not a single Class Member has opted out of, nor objected to, this settlement. Ex. 1 at ¶¶ 10-18. In fact, Class Counsel's communications with the Class Members indicate the reaction to the settlement being overwhelmingly positive. Ex. 2 at ¶¶ 20-22. Settlements

are routinely approved when 10% of the class or less assert objections. *See IUE-CWA v. Gen. Motors Corp.*, 238 F.R.D. 583, 591 (E.D. Mich. 2006) (Hood. J) (approving a settlement where there was 34 objectors out of 32,000 class); *Stoetzner v. U.S. Steel Corp.*, 897 F.2d 115, 118–19 (3d Cir.1990) (objections by only 10% of the class "strongly favors settlement"); *Petrovic v. Amoco Oil Co.*, 200 F.3d 1140, 1152 (8th Cir.1999) (approving settlement where objectors represented fewer than 4% of the class).

Where, as here, there is no opposition to the settlement from absent Class Members, the very lack of objection indicates assent and approval from the absent Class Members, and favors approval of the settlement. *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 527 (E.D. Mich. 2003) (in the class action settlement context, some objections are to be expected; as such, only a small number of objections received is "indicative of the adequacy of the settlement"); *Berry v. Sch. Dist. of City of Benton Harbor*, 184 F.R.D. 93, 106 (W.D. Mich. 1998) ("'[i]n the class action context, silence may be construed as assent'"); *Lazy Oil Co. v. Wotco Corp.*, 95 F. Supp. 2d 290, 331–32 (W.D. Pa. 1997), *aff'd sub nom. Lazy Oil Co. v. Witco Corp.*, 166 F.3d 581 (3d Cir. 1999)(" '[i]n the class action context, silence may be construed as assent'").

### vii.  Public Interest in the Settlement.

The fact that the Settlement (1) resolves what would be further protracted litigation and (2) provides relief for individuals who, financially or otherwise, would be unable to bring their claims individually, also supports a finding that the Parties' Settlement promotes the public interest. *See, e.g., Graybill*, 2018 WL 4573289 at *7

16

(finding this factor favored approval because it was a reasonable compromise and "provides relief for individuals who may not be able to bring these claims on their own"); *Gentrup v. Renovo Servs.*, LLC, No. 1:07CV430, 2011 WL 2532922, *3 (S.D. Ohio June 24, 2011) ("Given the uncertainties surrounding the possible trial in this matter, the certainty and finality that come with settlement also weigh in favor of a ruling approving the settlement. Such a ruling promotes the public interest in encouraging the settlement of litigation."); *Kritzer*, 2012 WL 1945144 at *8 ("Generally speaking, the public interest favors the settlement of class action litigation.").

4.   **Standards for Final Settlement Approval Under the FLSA.**

As a general rule, "court approval is required for the settlement of claims for back wages or liquidated damages under the FLSA." *Williams v. Glob. Appliances, LLC*, No. 19-12114, 2020 WL 13815464, at *1 (E.D. Mich. Aug. 20, 2020) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1354 (11th Cir. 1982)). "[D]istrict courts in our Circuit regularly find that the FLSA context counsels in favor of courts approving settlements." *Scobey*, 2021 WL 5040312, at *2 (Hood, J.) (quoting *Athan v. United States Steel Corp*, 523 F.Supp.3d 960, 964-65 (E.D. Mich. 2021)). Before approving settlement of an FLSA claim, "'the Court must determine that the parties were engaged in a bona fide dispute and that the settlement is a fair and reasonable compromise of the issues presented.'" *Scobey*, 2021 WL 5040312 at *2 (quoting *Athan*, 523 F.Supp. 3d at 965)); *Lakosky v. Discount Tire Co., Inc.*, 2015 WL 4617186, at *1 (E.D. Mich. July 31, 2015). "A bona fide dispute has to do with whether some issue of the employer's liability is

'actually and reasonably in dispute.'" *Id.* (quoting *Snook v. Valley Ob-Gyn Clinic, P.C.*, No. 14-cv-12302, 2015 WL 144400, at *1 (E.D. Mich. Jan. 12, 2015)).

"This Circuit has not directly stated the factors courts are to consider in deciding whether an FLSA collective action settlement is fair and reasonable." *Scobey*, 2021 WL 5040312 at *2 (quoting *O'Bryant v. ABC Phones of N Carolina, Inc.*, No. 19-CV-02378-SHM-TMP, 2020 WL 7634780, at *7 (W.D. Tenn. December 22, 2020)). As explained above, however, the UAW "seven-factor test" applied to determine "whether or not a class action settlement is 'fair, reasonable, and adequate,'" *Does 1-2 v. Deja Vu Services, Inc.*, 925 F. 3d 886, 894–95 (6th Cir. 2019), also weighs in favor of approving the Parties' proposed FLSA settlement.

The elements and analysis regarding the approval of this FLSA collective settlement mirror the elements regarding the approval of a class action settlement outlined above. Moreover, this Court granted preliminary approval of this class-wide Settlement as a fair and reasonable resolution of a bona fide dispute that would provide significant relief to the Plaintiffs and Putative Class Members (as defined in the Settlement Agreement). Plaintiffs submit the Settlement meets the standards for final approval under the FLSA.

As such, this Court should enter an Order approving the FLSA settlement.

## 5.   Final Certification of the State Law Rule 23 Classes is Appropriate.

A class may be certified under Rule 23(a) only if "(1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact

common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class." FED. R. CIV. P. 23(a); *In re American Medical Systems, Inc.*, 75 F.3d 1069, 1079-1083 (6th Cir. 1996); *Bacon v. Honda of America Manufacturing, Inc.*, 370 F.3d 565, 569 (6th Cir. 2004). Each of those prerequisites is satisfied here. "Once those conditions are satisfied, the party seeking certification must also demonstrate that it falls within at least one of the subcategories of Rule 23(b)." *In re Am. Med.*, 75 F.3d at 1079.

Plaintiffs seek final certification (for settlement purposes) of (1) the collective action under the FLSA; and (2) the two respective Rule 23 state law sub-classes (referred to collectively as the "Rule 23 Classes"), as set forth in the Preliminary Approval Order.

### a.  The Rule 23 Classes are sufficiently numerous.

Numerosity is met where "the class is so numerous that joinder of all members is impracticable." FED. R. CIV. P. 23(a)(1). "Although not an absolute rule, it generally is accepted that a class of 40 or more members is sufficient to satisfy the numerosity requirement." *Crawford v. TRW Auto. U.S. LLC*, No. 06-cv-14276, 2007 WL 851627, at *3 (E.D. Mich. Mar. 21, 2007); *see also Garner Prop.*, 333 F.R.D. at 622 ("[A] class of 40 or more members is sufficient to satisfy the numerosity requirement."); *Davidson v. Henkel*, 302 F.R.D. 427, 436 (E.D. Mich. 2014) (numerosity is satisfied with a putative class of at least "between 21 and 40" members); *Afro American Patrolmen's League v. Duck*,

503 F.2d 294, 298 (6th Cir. 1974) (35 members); *Slanina v. William Penn Parking Corp.*, 106 FRD 419, 423 (W.D. Pa. 1984) (25 persons).

Although other factors may be considered, the Sixth Circuit has "distinctly emphasized that '[w]hen class size reaches substantial proportions ... the impracticability requirement are usually satisfied by the numbers alone.'" *Davidson v. Henkel Corp.,* 302 F.R.D. 427, 436 (E.D. Mich. 2014) (citing *In re Am. Med. Sys., Inc.*, 75 F.3d at 1079)). That is plainly the case here.

Here, there are 154 Rule 23 Class Members, fifty-five (55) of whom returned claim forms to participate in the settlement. Ex. 1 at ¶ 15. The numerosity requirement is easily met.

### b.  The Commonality Requirement Is Met.

"Commonality requires 'a common contention' that, if resolved, would resolve claims of all class members 'in one stroke.'" *Thomsen v. Morley Companies, Inc.*, No. 1:22-CV-10271, 2022 WL 16708240, at *2 (E.D. Mich. Nov. 4, 2022) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)). The standard is not a demanding one. *Friske v. Bonnier Corp.*, 16-12799, 2019 WL 2601349, at *3 (E.D. Mich. June 25, 2019). "A common question of law or fact exists if all the Class's members suffered the same injury." *Id.* The commonality element is satisfied in this case.

All the classes consist of current and former Recruiting Position Workers who worked for Defendant during a set period. The primary questions of law and fact central to the claims of the classes against Defendant include:

a. Whether Defendant improperly classified the Rule 23 Class Members as exempt employees;

b. Whether Defendant's non-payment of wages amount to a willful violation of the respective state wage and hour laws, allowing for liquidated damages and a longer statute of limitations; and,

c. Whether the Class Members have sustained damages and, if so, the proper measure of damages.

Thus, for settlement purposes, the proposed Class members share sufficient commonality to satisfy the requirements of Rule 23(a)(2). *See Coulter-Owens v. Time, Inc.*, 308 F.R.D. 524, 533–34 (E.D. Mich. 2015) (finding commonality is satisfied if "the litigation is driven by issues that are common to the entire putative class").

### c. The Typicality Requirement Is Met.

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." FED. R. CIV. P. 23(a)(3). "Typicality is met if the class members' claims are 'fairly encompassed by the named plaintiffs' claims.'" *In re Whirlpool Corp. Front-Loading Washer Products Liab. Litig.*, 722 F.3d 838, 852 (6th Cir. 2013). "This requirement ensures that the representatives' interests are aligned with the interests of the represented class members so that, by pursuing their own interests, the class representatives also advocate the interests of the class members." *Id.* at 852-53. "If there is a strong similarity of legal theories, the requirement is met, even if there are factual distinctions among named and absent class members." *Intl. Union v. Ford Motor Co.*, 05-74730, 2006 WL 1984363, at *19 (E.D. Mich. July 13, 2006), *aff'd*, 497 F.3d 615 (6th Cir. 2007). "The test for typicality, like commonality, is not

demanding." *Friske*, 2019 WL 2601349, at *4; *Davidson*, 302 F.R.D. at 438 ("Like the test for commonality, the test for typicality is not demanding and the interests and claims of the various plaintiffs need not be identical.").

Here, the claims of the Named Plaintiffs arise from the same alleged factual and legal circumstances that form the bases of the Rule 23 claims asserted on behalf of the Rule 23 Class Members. Each Rule 23 Named Plaintiff worked for Defendant during the applicable time period in the relevant state, under the laws of which she seeks to represent a class: Illinois (Robinson), Kentucky (Johnson), Pennsylvania (Majeed), and California (West).[5] Likewise, they were classified as exempt by Defendant and paid a salary with no overtime compensation. Moreover, they all seek the same type of relief: their unpaid overtime compensation and associated damages. These allegations are sufficient to meet Rule 23's typicality requirement.

### d. The Named Plaintiffs are adequate representatives.

For Rule 23(a)(4), the Court must "measure the adequacy of the class members' representation based upon two factors: 1) the representatives must have common interests with unnamed members of the class, and 2) it must appear that the representatives will vigorously prosecute the interests of the class through qualified counsel." *In re Dry Max Pampers Litig.*, 724 F.3d 713, 721 (6th Cir. 2013). "The Rule requires that the class members have interests that are not antagonistic to one another.

---

[5] As described herein, Named Plaintiff Larry seeks for the FLSA settlement to be approved.

Thus, the linchpin of the adequacy requirement is the alignment of interests and incentives between the representative plaintiffs and the rest of the class." *Id.*

Here, there is no evidence Named Plaintiffs have interests that are antagonistic to or at odds with those of the Rule 23 Class Members. Thus, Named Plaintiffs should be deemed adequate representatives of the proposed Rule 23 Class Members. Furthermore, these Named Plaintiffs have shown themselves to be adequate representatives of the Classes, as each has devoted time and effort in prosecuting the claims herein, including: (1) assisting counsel with investigating the case; (2) providing discovery responses; and (3) assisting with settlement negotiations. *See, e.g., Strano v. Kiplinger Washington Eds., Inc.*, No. 1:21-CV-12987, 2023 WL 119647, at *3 (E.D. Mich. Jan. 6, 2023).

Additionally, Class Counsel also meets the adequacy requirement of Rule 23(a)(4) because they have years of experience prosecuting and settling class action claims under state and federal wage laws. *See* ECF No. 185-7, PageID.4786-87, Declaration of Michael Josephson, Class Counsel at ¶¶ 3-10. Moreover, Class Counsel has pursued the interests of Plaintiffs and Claimants vigorously for years throughout this litigation.

### e.  Rule 23(b)(3) Factors Are Met.

Rule 23(b)(3) permits class actions if (1) the common questions of law and fact predominate over any questions affecting only individuals and (2) the class-action mechanism is superior to the other available methods for the fair and efficient adjudication of the controversy. FED. R. CIV. P. 23(b)(3).

The Rule 23(b)(3) predominance inquiry tests whether a proposed class is "sufficiently cohesive to warrant adjudication by representation." *Amchem*, 521 U.S. at 623. The predominance inquiry examines "whether the shared attributes will be the main focus of the litigation." *Id.* at 623-24. "To meet the predominance requirement, a plaintiff must establish that issues subject to generalized proof and applicable to the class as a whole predominate over those issues that are subject to only individualized proof." *Randleman v. Fidelity Nat'l Title Ins. Co.*, 646 F.3d 347, 353 (6th Cir. 2011)

> There are no bright lines for determining whether common questions predominate. Instead, considering the facts of the case presented, a claim will meet the predominance requirement when there exists generalized evidence which proves or disproves an element on a simultaneous, class-wide basis, since such proof obviates the need to examine each class member's individual position. Common questions need only predominate; they need not be dispositive of the litigation. The predominance requirement is satisfied unless it is clear that individual issues will overwhelm the common questions and render the class action valueless.

*In re Cardizem CD Antitrust Litig.*, 200 F.R.D. 297, 307 (E.D. Mich. 2001) (internal citations omitted).

Here, Plaintiffs contend that the Rule 23 Class Members (and the Opt-In Plaintiffs) were all misclassified by Defendant as exempt employees. The Rule 23 Class Members and the Opt-In Plaintiffs all were paid in the same or similar manner and had similar job titles. Defendant has the same or similar defenses regarding the claims asserted by all Rule 23 Class Members and Opt-In Plaintiffs. *See* ECF No. 8, at PageID.14; ECF No. 62, at PageID.1361; *Clark v. A&L Homecare & Training Ctr., LLC*, 68 F.4th 1003, 1011 (6th Cir. 2023) ("plaintiffs must show a 'strong likelihood' that those employees are

similarly situated to the plaintiffs themselves"). The Rule 23 Class Members and the Opt-In Plaintiffs all have the same common questions of law and fact.

As to the second prong, Rule 23(b)(3) sets forth a non-exclusive list of factors pertinent to judicial inquiry into the superiority of a class action, including: the class members' interests in individually controlling the prosecution or defense of separate actions; whether individual class members wish to bring, or have already brought, individual actions; and the desirability of concentrating the litigation of the claims in the particular forum. FED. R. CIV. P. 23(b)(3). "In considering whether the superiority requirement of Rule 23(b)(3) is satisfied, courts consider the difficulties likely to be encountered in the management of a class action. Where it is not economically feasible to obtain relief within the traditional framework of a multiplicity of small individual suits for damages, aggrieved persons may be without any effective redress unless they may employ the class-action device." *Young v. Nationwide Mut. Ins. Co.*, 693 F.3d 532, 545 (6th Cir. 2012) (internal citations omitted). A class action is considered preferable where the class members are unlikely to seek relief in individual suits. *Kotila v. Charter Fin. Publg. Network, Inc.*, 1:22-CV-704, 2023 WL 3408349, at *4 (W.D. Mich. May 12, 2023).

Finally, where "confronted with a request for settlement only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems... for the proposal is that there be no trial." *Amchem*, 521 U.S. at 620. A class action is the superior method of resolving claims if it will "achieve economies of time, effort, and expense, and promote... uniformity of decision as to

25

persons similarly situated, without sacrificing procedural fairness or bringing about other undesirable results." *Id.* at 615.  Here, the factors set forth in Rule 23(b)(3) weigh in favor of class certification for settlement purposes because: (i) there is no indication that individual class members would prefer to bring individual actions rather than obtaining relief through a class-wide settlement; (ii) it is desirable to litigate (and settle) the claims in this forum because it is the District in which Defendant is headquartered; and (iii) it would not be economically feasible for many of the Rule 23 Class Members to obtain relief by bringing small individual suits.

## 6.   Final Approval of the Service Awards is Warranted.

In exchange for signing a general release of claims (ECF No. 185-4, PageID.4757), each Named Plaintiff will receive a Service Award of $5,000.00. Service Awards are common as a method for Courts to compensate Named Plaintiffs for shouldering the risks of litigation on behalf of others while forever associating their names with the litigation in the public record. *See Dillworth v. Case Farms Processing, Inc.* No. 5:08-CV-1694, 2010 WL 776933, at *7 (N.D. Ohio Mar. 8, 2010) (authorizing a total of $10,000.00 in enhancement awards to two Named Plaintiffs); *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 351 (6th Cir. 2009) (approving service awards in the amount of $10,000 each to seven class representatives).

In this case, Named Plaintiffs played a crucial role in answering questions of class counsel and other Class Members regarding the case, the issues, and the settlement, as well as participating in written discovery and providing sworn deposition

testimony. *See* Ex. 2 at ¶ 21. Named Plaintiffs also provided documents and insight essential to understanding the pay practices at issue, which favors approval of the requested Service Awards. *See In re CMS Energy ERISA Litig.*, No. 02-72834, 2006 WL 2109499, at *3 (E.D. Mich. June 27, 2006) (awarding class representatives service award compensation of $15,000, finding the same to be fair and reasonable in light of their substantial contribution to the litigation, including providing information to class counsel assisting in discovery, providing deposition testimony and participating in settlement discussions). Without the direct involvement of the Named Plaintiffs, such a settlement would not be possible. The requested Service Awards should be approved. *Id.*

## 7.     The Agreed Fees and Costs Should Be Approved.

In accordance with the terms of the Settlement, Class Counsel seeks final approval of the attorneys' fees and expenses preliminarily approved by the Court on December 11, 2023. Plaintiffs' Counsel's negotiated Attorneys' Fees account for up to 35% of the Gross Settlement Amount *See* ECF No. 185-1; *see also* Ex. 2 at ¶ 26. Here, Plaintiffs' counsel seeks, and Defendant does not oppose to Court approval, attorneys' fees in an amount equal to 35% of the Gross Settlement Fund ($1,102,500.00), as well as reimbursement of their actual out-of-pocket litigation costs in an amount of $62,118.92. *Id.*   All costs and expenses were contemporaneously recorded in the books and account ledgers of Class Counsel and are available for inspection if necessary. Both amounts are fair and reasonable to compensate Plaintiffs' Counsel for their efforts in

prosecuting this action.

An award is reasonable if it is "adequately compensatory to attract competent counsel yet which avoids a windfall for lawyers." *See Reed v. Rhodes,* 179 F.3d 453, 471 (6th Cir. 2008) (citing *Hensley v. Eckerhart,* 461 U.S. 424, 437, 103 S. Ct. 1933, 76 L.Ed.2d 40 (1983)). The primary consideration in this Circuit is that the award "be reasonable under the circumstances. *Rawlings v. Prudential-Bache Properties, Inc.,* 9 F.3d 513, 516 (6th Cir. 1993). District courts within the Sixth Circuit have the discretion to select one of two methods for calculating an award of attorneys' fees in a common fund case by using either a percentage of the fund calculation or a lodestar multiplier. *Id.* at 516-17. The percentage of the common fund method has the advantage of establishing reasonable expectations on the part of class counsel "as to their expected recovery," and encouraging early settlement before substantial fees and expenses have accumulated. *Dillworth,* 2010 WL 776933, at *7; *see also In re Flint Water Cases*, 583 F. Supp. 3d 911, 946 (E.D. Mich. 2022)(awarding fees and finding the percentage of the fund award method reasonable in class action settlement).[6]

---

[6] Though the *Flint Water* court ultimately used the percentage of the fund method that Class Counsel advocates here, it didn't entirely discount the lodestar method, saying the same can be used for cross-check purposes in actions where percentage of the fund is the appropriate determinative method. *Flint Water,* 583 F. Supp. 3d at 930-31. The estimated lodestar calculation for attorney fees incurred pursuing this litigation for the year 2022 alone is upwards of $1.5 million dollars. Ex. 2, at ¶¶ 25-26. As this action has been in litigation from June 2020 to the present, the actual lodestar calculation for the full pendency of the litigation is significantly higher. *Id.*

Here, the contingent nature of the fee agreement also meant that counsel bore the risk of receiving no fee in the event that a less than favorable result was achieved. Class Counsel's request for thirty-five percent of the Maximum Settlement Fund falls well within the range of reasonable allocations in the context of awards granted in other, similar cases. In *Terry v. Tri-State Wireline, LLC*, the Court approved a class and collective action settlement involving wireline operators paid a salary and a job bonus. Civil Action 2:15-cv-00382-NBF (W.D. Pa. Jan. 14, 2016) at ECF No. 31. In that case, the Court approved attorney fees of 35%, $25,000.00 in attorney costs, $5,500.00 in settlement administration costs, and $20,000.00 in enhancement awards. The Court held that the settlement was substantial, fair, and reasonable. *See also Rollison v. X-Chem, LLC, et al,* Civil Action 2:15-cv-00043-MHR (W.D. Pa. March 16, 2016) at ECF No. 44. (approving 35% fee award and $20,000.00 in costs); *Smiley, et al., v. ROC Service Company, LLC*, C.A. 2:14-cv-01539-CRE (W.D. Pa. Sept. 22, 2015) at ECF No. 53; (same); *Erie County Retirees Assoc. v. County of Erie. Pa.*, 192 F. Supp. 2d 369, 382-83 (W.D. Pa. 2002) (38% of common fund awarded as fees in ADEA collective action case brought pursuant to 29 U.S.C. §216(b)); *Jackson v. Papa John's,* Case No. 1:08-CV-2791 (N.D. Ohio 2008) (approving 33.33% attorney fees); *Fincham v. Nestle Prepared Foods Co.,* Case No. 1:08-CV-73 (N.D. Ohio 2008) (same).

Likewise, payment to RUST Consulting should be approved. The Court approved RUST Consulting, Inc. as the Claims Administrator. As discussed above, Rust was responsible for verifying the Class Members' addresses, mailing and emailing the

29

Notice documents to class members, collecting and approving the claim forms, responding to class member inquiries, distributing the payments provided for herein, reporting the taxes and withholdings pursuant to such payments, and performing such other duties as the parties may mutually direct or as are specified herein. Plaintiffs respectfully request that this Court approve a payment of $13,272.00 to Rust for the services performed and to be performed in this case. *See* Ex. 2 at ¶ 22. This amount is reasonable and well deserved.

This Court should approve the foregoing fees and costs.

## 8.     Conclusion

For the above reasons, the Court should: Plaintiffs request the Court enter an order granting Final Approval of the terms of this Class and Collective Settlement.

Respectfully submitted,

By: */s/ Michael A. Josephson*
Michael A. Josephson
Texas Bar No. 24014780
Andrew W. Dunlap
Texas Bar No. 24078444
Alyssa White
Texas Bar No. 24073014
**JOSEPHSON DUNLAP LAW FIRM**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
713-352-1100 – Telephone
713-352-3300 – Facsimile
mjosephson@mybackwages.com
adunlap@mybackwages.com
awhite@mybackwages.com

Richard J. (Rex) Burch
Texas Bar No. 24001807
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
713-877-8788 – Telephone
713-877-8065 – Facsimile
rburch@brucknerburch.com

Jennifer L. McManus (P65976)
**FAGAN MCMANUS, PC**
25892 Woodward Avenue
Royal Oak, Michigan 58067
248-542-6300 – Telephone
jmcmanus@faganlawpc.com

**ATTORNEYS FOR PLAINTIFFS**

## LOCAL RULE 7.1(A) CERTIFICATE OF CONFERENCE

Counsel for both Parties have conferred, and the instant motion is unopposed.

*/s/ Michael A. Josephson*
**Michael A. Josephson**

## CERTIFICATE OF SERVICE

I hereby certify that on April 19, 2024, the foregoing document was served by ECF electronic filing on all known parties.

*/s/ Michael A. Josephson*
**Michael A. Josephson**